No. 43,920

George H. Wallerius, *Appellant,* v. Robert Hare, _____ Hare, His Wife, Whose First Name Is Unknown, Mary Roe and Richard Doe, the Latter Two Defendants' True Names Being Unknown, *Appellees.*

(399 P. 2d 543)

Opinion filed March 6, 1965.

*James T. Graves,* of Salina, argued the cause, and *C. L. Clark, James P. Mize* and *Thomas M. Lillard, Jr.,* all of Salina, were with him on the briefs for the appellant.

*John Q. Royce,* of Salina, argued the cause, and *E. S. Hampton, H. H. Dunham, Jr., H. G. Engleman, C. Stanley Nelson, Jack N. Stewart* and *Tom W. Hampton,* all of Salina, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from an order sustaining a demurrer to a petition seeking specific performance of an agreement for the sale of land.

The facts as disclosed by the second amended petition must be presented in considerable detail.

The defendant, Robert Hare, was the owner of a three-quarters section of land in Ottawa County, Kansas. The land was used solely for grazing cattle and Carl Nelson claimed a lease on the land for

the 1962 grazing season. The pleader did not know the terms, duration or form of the purported lease and could not plead whether or not the claim was valid.

Hare retained James H. Seng, a real estate broker of Salina, Kansas, as his agent to obtain a purchaser for the land. The plaintiff, George H. Wallerius, became a willing purchaser and on February 20, 1962, gave the agent a check for earnest money in the sum of $5,000 and executed an instrument designated "agreement for warranty deed." The agreement contained the usual provisions, described the land and provided:

"And the said party of the second part hereby covenants and agrees to pay the Party of the first part the sum of Twenty-eight Thousand eight hundred ($28,800.00) DOLLARS, in the manner following: Five Thousand (5,000.00) DOLLARS, cash in hand, paid as earnest-money, the receipt of which is hereby acknowledged, and balance to be paid upon approval of title. *Full possession to be given 2nd party on or before April 1, 1962.* This contract must be accepted on or before the 1st day of March, 1962, or it automatically becomes cancelled at the option of the party of the 2nd part." (Emphasis supplied.)

On February 20, 1962, the agent forwarded the agreement and the check to Hare accompanied by a letter which read in part:

" 'There are only two provisions that are not absolute. One is the possession clause, and the other is the acceptance of the sale by you on or before March 1, 1962.

" 'I do not feel that the tenant is being fair to you, but I do think that he will let you cancel his lease for a nominal sum.

" 'It is barely possible that, should you not be able to deliver possession, that my client might accept the property subject to tenants rights. We will cross that bridge if and when we get to it."

On February 28, 1962, having received the agreement and the Five Thousand Dollar check, Hare transmitted a telegram to his agent, Seng, containing the following message:

"Accept offer Wallerius providing obtain cancellation pasture lease from Nelson any litigation lawyers fee or damages paid by purchaser."

Also on February 28, 1962, Hare transmitted a telegram to Carl Nelson, the tenant, containing the following message: "Sold pasture: must cancel lease for 1962."

Seng informed the plaintiff, Wallerius, of the receipt of the telegram whereupon he, on March 1, 1962, transmitted a telegram to Hare containing the following message: "Accept counter-proposal via telegram in connection with contract to purchase land in Ottawa County, Kansas. Letter follows." which was delivered to the defendant on March 1, 1962, 2:00 P. M., Pacific Standard Time.

After receipt of the above telegram Hare transmitted to his agent, Seng, a telegram on March 2, 1962, 7:45 A. M., Pacific Standard Time, containing the following message: "Recd offer today $32,000.00 net to me. Therefore withdrawing land from sale. Thanks for help. Will contact you when ready to sell."

The letter referred to in the telegram dated March 1, 1962, from Wallerius to Hare, was signed by the agent and read in part:

"Mr. Wallerius sent you a telegram of acceptance of your counter proposal this afternoon, which you will have received long before receipt of this letter.

"In checking with the telegraph office, I found that they had been unable to obtain an answer at the Nelson residence, so I suggested they contact Mrs. Nelson at her place of work here in Salina. I also requested that they notify me of delivery of the message to the Nelsons, but because of rules governing giving out information in connection with telegrams, they did not wish to supply me with any information in connection with it. They finally agreed to call me if it were or were not delivered, but instead, they asked Mrs. Nelson to call me, which she did. She seemed to accept the message completely and give no indication whatever of any unwillingness to abide. She did want to know who had bought it and what they had paid. I didn't figure it was any of her business, but rather than antagonize her, I give her the information. The purchaser was sitting in my office listening.

"It appears that we should have no further difficulty, and I will anticipate receipt of the original and copy of the signed contract, along with the check, which I will convert into a Cashier's Check. You may instruct me to deduct the commission therefrom, and I will mail you a Cashier's Check for the balance. Please also send the abstract of title, so that we may proceed with extension and examination."

We are not informed as to the date on which the letter was received.

The trial court sustained a demurrer to the second amended petition alleging the above facts for the reason that the petition did not state facts sufficient to constitute a cause of action. In just what particular the facts are insufficient is not stated.

The appellees argued in the court below and contend here that their telegram was not an acceptance of appellant's offer but indicated a willingness to accept appellant's offer upon cancellation of the pasture lease and that appellees by their telegram made cancellation of the pasture lease a condition precedent to the formation of a contract. Appellees state:

"Treating defendant's telegram of February 28, 1962, as a counter-offer, plaintiff, on March 1, 1962, sent a telegram to defendant as follows:

"'Accept counter-proposal via telegram in connection with contract to purchase land in Ottawa County, Kansas. Letter follows.'

"While this message may have bound plaintiff to pay any expenses in-

curred, or damages assessed against defendant in attempting to obtain cancellation of the pasture lease, it certainly does not constitute a contract between plaintiff and defendant for the purchase and sale of the land. Cancellation of the pasture lease was still a condition precedent to the formation of that contract.

"In order to establish a completed contract for the purchase and sale of this land, it would be essential that plaintiff be able to plead and prove fulfillment of this condition. . . ."

We suggest that it would be rather a harsh rule which would make appellant liable under its telegram, "accepting counter-proposal," for the payment of "any expenses incurred, or any damages assessed against defendant in attempting to obtain cancellation of the pasture lease" and place no responsibility whatsoever upon appellees in connection with the cancellation of such lease. However, we do not care to base our decision upon this limited issue.

We agree with appellee that the telegrams created a condition precedent.

The word "provided" when used in a contract is usually used in the conjunctive sense. As so used the word means "on condition" and a condition precedent is created. Webster's New Twentieth Century Dictionary, Unabridged, Second Edition, defines "provided" as follows: "on condition; on these terms; this being understood, conceded or established; if: frequently followed by *that*."

The word "provided" is defined in 73 C. J. S., Provided, p. 266, as follows:

"It has been said that there has been much nice discussion on the word, and it is regarded as an apt word to create, express, or introduce a condition or exception, or for creating a condition precedent; and it is an apt and appropriate word to indicate an intention to give contingently. It frequently indicates a condition, and it has been said that ordinarily it indicates that a condition follows; and is recognized as implying a condition without the addition of any other words."

Since we admittedly have involved a condition precedent, the condition being the cancellation of the pasture lease to make possible the delivery of possession by April 1, 1962, the question is, what application is to be made of the condition?

The appellees contend that the cancellation of the lease was a condition precedent to the formation of a contract and that it was essential that appellant plead definite fulfillment of the condition, *i. e.*, that the lease was actually cancelled.

The appellant contends that the condition contained in appellees'

telegram and accepted by appellant was incorporated in the original offer and a complete contract was consumated but that the cancellation of the lease was a condition precedent to requiring performance of the contract which was complete in all of its terms. Appellant further contends that having bound himself to pay any expenses incurred, or damages assessed against appellees in their attempt to obtain cancellation of the pasture lease, they were bound to exercise a reasonable effort to cancel the lease.

We are inclined to agree with appellant's contention.

A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main contract. It is one without the performance of which the contract, although in form executed and delivered by the parties, cannot be enforced. A condition precedent requires the performance of some act or the happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect. (See Words and Phrases, Conditions Precedent, Vol. 8, pp. 713-785.)

While the condition precedent must have happened before the contract can be enforced or relief sought in the way of specific performance, the party who has demanded the condition precedent cannot hinder, delay or prevent its happening for the purpose of avoiding performance of the contract. We believe the rule announced in *Talbott v. Nibert,* 167 Kan. 138, 206 P. 2d 131, is applicable here. On page 146 of the opinion it is stated:

"The rule is clear and well settled, and founded in absolute justice, that a party to a contract cannot prevent performance by another and derive any benefit, or escape any liability, from his own failure to perform a necessary condition. (*Dill v. Pope,* 29 Kan. 289; *Supply Co. v. Cement Co.,* 91 Kan. 509, 512 138 Pac. 599; *Briney v. Toews,* 150 Kan. 489, 495, 95 P. 2d 355.) And this is the universal rule. (12 Am. Jur., Contracts, §§ 381, 386; 2 C. J., Agency, § 439, p. 772; 13 C. J., Contracts, §§ 721, 722, 723; Restatement, Contracts, § 315.)"

Considering the facts as alleged in the petition, in the light most favorable to the pleader, as we are bound to do (*Belin v. Hoover,* 193 Kan. 29, 391 P. 2d 1021; *Beggerly v. Walker,* 194 Kan. 61, 397 P. 2d 395) our responsibility is to determine whether they raise a reasonable inference that the pasture lease was cancelled in fact, if not in deed, or could have been cancelled by appellees had they not desired to avoid performance of the contract of sale because they had received an offer of a higher price.

A brief review of the facts most favorable to appellant discloses that the appellees had at least until April 1, 1962, in which to seek cancellation of the lease, yet they attempted to cancel the agreement by telegraph March 2, 1962, the next day after their condition was accepted by appellant, because they had received an offer of $32,000.00 net to them. They did so after being informed that Mrs. Nelson, the wife of the lessee, on whose decision reliance appears to be placed, ". . . seemed to accept the message [telegram cancelling pasture lease] completely and give no indication whatever of any unwillingness to abide. . . ." The agent also informed the appellees prior to the attempted cancellation that "It appears we should have no further difficulty, . . ."

It appears that the facts as alleged in the second amended petition leave much for the appellees to explain by way of answer if they are to avoid performance. We must conclude that the second amended petition states facts sufficient to constitute a cause of action for specific performance of the contract for a warranty deed.

Other contentions raised by appellees can best be disposed of after the case is heard on its merits.

The judgment is reversed with instructions to overrule the demurrer to the second amended petition.

APPROVED BY THE COURT.