No. 66,058

DAVID M. ARNOLD, *Appellee,* v. S.J.L. OF KANSAS CORP. f/k/a
THE KANSAS STATE NETWORK, INC. *Appellant.*

(822 P.2d 64)

Opinion
filed December 6, 1991.

*Gerald Sawatzky,* of Foulston & Siefkin, of Wichita, argued the cause
and *Mary Kathleen Babcock,* of the same firm, was with him on the briefs
for appellant.

*Ray E. Simmons,* of Derby, argued the cause and was on the brief for
appellee.

The opinion of the court was delivered by

HERD, J.: Plaintiff David M. Arnold brought this civil action
against the owner of a Wichita television station, S.J.L. of Kansas
Corp., formerly known as the Kansas State Network, Inc., claim-
ing breach of his employment contract.

The facts out of which this controversy arose are as follows. In
1978, Arnold was employed as a photographer for WCPO, a
television station in Cincinnati, Ohio. He had previously worked
in Wichita for two months under Ron Williams, the chief pho-
tographer at KARD-TV, Channel 3. In late 1978, Williams called
Arnold on several occasions about returning to work for KARD-

TV. Arnold was not interested until Williams told Arnold that he, Williams, intended to transfer to a planned production department in June 1979, and at that time Arnold would be promoted to chief photographer. The promise of ultimately getting the chief photographer job was important to Arnold because he would be moving to a smaller television market and taking a cut in salary. While in Cincinnati, Arnold had acquired special knowledge and skills in using live microwave broadcasting known as electronic news gathering (ENG). The news director for KARD-TV, John Denney, was anxious to obtain Arnold's expertise.

Arnold also had discussions with Denny about taking a photographer position and then stepping into the chief photographer job when Williams changed positions. Arnold asked Denney for some written confirmation of their agreement. At trial Arnold produced an undated letter signed with Denney's name that stated in pertinent part:

"Dave,

"The offer of employment KARD-TV has made to you includes the following:

"You will be the assistant chief photographer, and at such time that the chief photographer should leave the employ of KARD-TV news department, you will be named chief photographer."

Williams testified the letter accurately represented the agreement between KARD-TV and Arnold. Denney, however, denies ever writing or signing the letter produced by Arnold, as does Williams. Thomas Mayhill of the Wichita Police Department, a hand writing expert, testified Arnold did not sign the letter. Mayhill could not conclusively state whether Denney had signed the letter, but he could not eliminate him as a possible signatory. The news director at the time of trial could not find a copy of the Denney letter in Channel 3's files.

Arnold accepted the staff photographer job on the basis of his conversations with Williams and Denney and moved to Wichita. He began work as a staff photographer on March 12, 1979. Arnold testified he was free to leave Channel 3 at any time and nothing required the television station to keep him as an employee. Williams' proposed transfer into production, however, did not materialize and he remained employed as the chief photographer

until July 5, 1989, when he voluntarily terminated his employment with Channel 3 and went to work elsewhere.

In 1980, KARD-TV was sold and the station FCC license was changed. The station became KSNW. Al Sandubrae replaced Denney as news director. When Arnold told Sandubrae of the agreement Arnold had made with Williams and Denney upon accepting a job with KARD-TV, Sandubrae replied that he was not responsible for the promises of prior owners. Over the years, Arnold mentioned his employment agreement to each new news director and each new general manager.

In 1988, KSNW was sold to S.J.L. When Williams actually left Channel 3 in 1989, Arnold and three other candidates were considered for the position of chief photographer. Bob Yuna, the news director, did not consider the conditions under which Arnold was hired relevant to the promotion. Ultimately, Ted Lewis, another Channel 3 photographer, was appointed to the position because of his outstanding leadership qualities. Williams agreed with Yuna on the selection of Lewis as the new chief photographer.

Arnold testified he had remained in Wichita after being denied the promotion because he was divorced in 1987 and wanted to be close to his family.

In November 1989, Arnold filed this breach of contract suit against S.J.L. and requested lost wages, past and future. Arnold's base salary was $22,880 per year plus $6,000 to $8,000 for overtime. When Williams left Channel 3 he was earning $32,000 annually. When promoted to the position of chief photographer, Ted Lewis was given a yearly salary of $36,000. Arnold testified he planned to work another 21 years.

Before trial, S.J.L. filed a motion for summary judgment, which was denied. The suit was tried to a jury, which found for Arnold and awarded him $126,000 in damages. Following the denial of S.J.L.'s motion for judgment notwithstanding the verdict, new trial, or remittitur, S.J.L. appealed.

S.J.L. first argues that Arnold's contract cause of action is barred by the statute of limitations. In order to determine whether that is true, we must first look at the terms of the contract and determine when Arnold's cause of action arose. In late 1978, Arnold agreed to accept the job of staff photographer

at KARD-TV on the condition that he would be promoted to the position of chief photographer in June 1979 when Williams moved to the station's planned production department. By 1980, it became apparent that Williams was not going to vacate the chief photographer position. In addition, the station was under new ownership. The new news director told Arnold at that time he did not feel bound by his predecessor's agreement.

Arnold contends his employer did not breach the agreement until 1989 when Lewis was hired to replace Williams as chief photographer. S.J.L., however, argues it is unreasonable to interpret the contract to mean Arnold's promotion could be postponed for a decade, or longer, as long as Williams remained the chief photographer. A basic rule of contract construction is that the terms of a contract must be given a reasonable meaning. We have stated:

"In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision." *Garvey Center, Inc. v. Food Specialties, Inc.*, 214 Kan. 224, Syl. ¶ 3, 519 P.2d 646 (1974).

We find it is unreasonable to construe the employment agreement to mean Arnold's employer made a permanent commitment to appoint Arnold to chief photographer no matter when or under what circumstances Williams might vacate that position. The interpretation proposed by Arnold is contradicted by his own admission that he could quit or be fired at any time. If his employer was permanently committed to promoting him it would mean his employer could not terminate Arnold until he had become chief photographer.

The letter produced by Arnold does not specify a date for his promotion. Instead it states "at such time that the chief photographer should leave the employee of KARD-TV news department, you will be named chief photographer." Another basic principle of contract construction is that where a contract does not specify the time of performance or for the occurrence of a necessary event, a reasonable time will be implied. In *Marsh v. Brown-Crummer Inv. Co.*, 138 Kan. 123, 23 P.2d 465 (1933), the de-

fendant sold bonds to the plaintiff and orally agreed to repurchase the bonds in the future at face value with interest, upon the demand of plaintiff. This court held this was not a permanent commitment to repurchase, even though no time limit was specified. Instead, the commitment was implied to extend for a reasonable time..

What is a reasonable time is usually a question of fact to be determined by the jury. *Rymph v. Derby Oil Co.*, 211 Kan. 414, 418, 507 P.2d 308 (1973); *Marsh,* 138 Kan. at 130. However, if there is no dispute as to the facts as in the case currently under consideration, the issue of what is reasonable becomes a question of law. In *Marsh,* we determined as a matter of law that a reasonable time to demand the repurchase would not exceed the three-year limitations period. 138 Kan. at 130-31. In other words, three years was a reasonable time within which to exercise contractual rights based upon the oral contract in the situation presented.

Arnold argues Williams' move out of the news department was a condition precedent beyond the control of his employer and, therefore, the delay in the occurrence of the condition could not trigger the statute of limitations. It is true that if a contract contains a condition precedent the condition must occur or be performed before the contract takes effect and is enforceable. See *Sweet v. Stormont Vail Regional Medical Center,* 231 Kan. 604, Syl. ¶ 2, 647 P.2d 1274 (1982); *Wallerius v. Hare,* 194 Kan. 408, 412, 399 P.2d 543 (1965). However, none of the evidence in this case indicates Williams' employment status was not within the employer's control. The employer could have gone ahead and promoted Williams to the production department, or he could have been fired since he was an employee-at-will.

In addition, early in Arnold's employment, KARD-TV could not have avoided its contractual obligations by claiming the contract was impossible to perform. In *Brown v. Cruse,* 90 Kan. 306, 133 Pac. 865 (1913), we held that where a party owing money has voluntarily disabled himself from complying with a condition he becomes at once liable. 90 Kan. at 307. Furthermore, if the contract is silent as to time of performance, the law implies performance shall occur within a reasonable time. 90 Kan. at 308.

Applying these principles to the controversy at bar, we find Arnold's claim is barred by the statute of limitations. By 1980, Channel 3 had not moved Williams out of the news department and Arnold was aware the new owner of Channel 3 did not consider itself bound by Arnold's employment agreement. Arnold admits he accepted the job at KARD-TV based upon his telephone conversations with Williams and Denney, not the letter produced at trial and that he could quit or be terminated at any time; thus, he was an employee-at-will. Therefore, Arnold should have brought his breach of contract claim no later than five years from the time it became apparent his employer was not going to honor the agreement (1980), in accordance with K.S.A. 60-511. Since this disposes of the case, we need not discuss the remaining issues.

The judgment of the trial court is reversed and judgment entered for appellant.