**The CIT GROUP/EQUIPMENT
FINANCING, INC.,
Plaintiff,**

v.

**INTEGRATED FINANCIAL SERVICES,
INC., Appellant/Respondent,**

**and**

**Chase Manhattan Service Corp.,
Respondent/Appellant.**

**No. WD 49763.**

Missouri Court of Appeals,
Western District.

Oct. 17, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 1995.

Lawrence J. Zimmerman, Kevin J. Odrowski, McDowell, Rice & Smith, P.C., Kansas City, for Appellant/Respondent Integrated Financial.

Richard E. McLeod, R. Denise Henning, The McLeod Law Firm, Kansas City, for Respondent–Appellant Chase Manhattan.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

LAURA DENVIR STITH, Presiding Judge.

Plaintiff–Appellant Integrated Financial Services, Inc. brought suit against Defendant–Respondent and Cross–Appellant Chase Manhattan Service Corporation alleging breach of contract and negligence for Chase's failure to provide financing under a Loan Commitment issued by Chase to Integrated. Following a jury verdict in favor of Integrated on both the breach of contract and negligence claims, Chase filed a Motion for Judgment Notwithstanding the Verdict ("JNOV") as to both claims. The trial court granted Chase's Motion with respect to the breach of contract claim but denied it as to the negligence claim.

Integrated appeals the trial court's grant of JNOV to Chase with respect to the breach of contract claim, contending that JNOV for Chase was precluded by the fact that Integrated made a timely demand for financing under the Loan Commitment and Integrated satisfied all conditions precedent to the Loan Commitment.

Chase cross-appeals, contending that the trial court erred in not granting JNOV to Chase with respect to Integrated's negligence claim. Among other reasons, Chase contends that Integrated failed to establish that Chase owed Integrated a legal duty to advise it that Chase was still obligated under the Loan Commitment after the loan package was sold to another lending institution.

The trial court's grant of JNOV to Chase on Integrated's breach of contract claim is affirmed because Integrated did not satisfy the implied conditions precedent to the Loan Commitment prior to making a demand for financing.

The trial court's denial of Chase's Motion as to Integrated's negligence claim is reversed. Negligence requires the existence of a legal duty and Chase did not have a legal duty to affirmatively advise Integrated that Chase was still obligated under the Loan Commitment after the loan was sold to another lending institution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Integrated Financial Services, Inc. ("Integrated") is a Kansas corporation engaged in the business of managing real estate assets and investment vehicles for pension plans. John J. Bennett is the sole shareholder and President of Integrated. The business activities of Integrated, particularly the property management services, are conducted throughout the United States and its territories. This appeal arises out of a loan commitment that was issued by Respondent/Cross–Appellant Chase Manhattan Service Corporation ("Chase") to Integrated for the financing of an airplane and replacement engines.

### A. The Loan Commitment.

In November, 1990, Integrated sought financing for the purchase of a 1970 Rockwell Sabre 60 airplane (the "airplane"). Integrated intended to use the airplane to accommodate its business activities around the country and as an investment which it could later sell for profit. Integrated planned to borrow $350,000 to purchase the airplane and to invest $150,000 for maintenance and renovation of the airplane. Once renovation was completed, Integrated intended to borrow another $200,000 to purchase suitable engines for the airplane.[1] Integrated did not intend to enter into any loan transaction if the loan amount covered only the purchase of the airplane and not the acquisition of replacement engines.

---

1. The engines on the airplane were "timed out" and needed to be replaced for commercial flight purposes. "Timed out" engines have reached the end of their useful commercial life, although they may still be used for private purposes.

Integrated directed Lee Sixta, a consultant experienced in corporate aircraft financing, to locate and negotiate the financing on behalf of Integrated for the acquisition of the airplane and subsequent acquisition of the engines. Mr. Sixta contacted Doug Johnson at Chase. Mr. Johnson sent a letter to Integrated on November 21, 1990, notifying Integrated that Chase approved the $550,000 financing package in accordance with the terms contained in the letter (the "Loan Commitment").

According to the terms of the Loan Commitment, Chase offered to loan an initial amount of $350,000 and an additional amount, not to exceed $200,000, for two replacement engines, as follows:

Loan Amount: $350,000.00. Additional credit has been approved for the cost of two (2) mid-time engines not to exceed $200,000.00. This additional amount will be funded under a separate promissory note and will be coterminus [sic] with the original loan.

The Loan Commitment also provided for a $1,000 administrative fee, a term of 48 months, and a 11.25% fixed interest rate. The Loan Commitment contained the express condition that "[f]unding is subject to CAFC inspection of the aircraft, and satisfactory receipt of two pending credit checks."

Mr. Bennett accepted the Loan Commitment on behalf of Integrated by signing the Loan Commitment and returning it to Chase by the designated time. The results of the aircraft inspection and credit checks were satisfactory to Chase. Integrated executed a promissory note in the amount of $351,000.00 (loan amount plus administrative costs) and a Security Agreement which granted Chase a security interest in the airplane. The first loan closed prior to December 15, 1990. Integrated then purchased the airplane.

### B. The Sale of Chase's Loan Portfolio.

In May, 1991, Chase sold substantially all of its corporate aircraft loan portfolio to The CIT Group/Equipment Financing, Inc. ("CIT"). Under the loan portfolio purchase agreement, Chase warranted to CIT that there were no obligations to lend additional money to any obligor for loans transferred to CIT. If any such obligations did exist it was Chase, and not CIT, which remained obligated to provide the additional financing.

Integrated's $351,000 promissory note and security agreement were sold to CIT. A copy of the Integrated Loan Commitment, however, was not transferred to CIT.

Chase notified Integrated of the sale of its loan portfolio to CIT by a letter dated June 25, 1991, which stated that Chase had "assigned its rights and interests in the account(s) on the enclosed invoice" to CIT. The letter further stated that "[t]his assignment includes, among other things, Chase Aircraft Financing Corporation's rights to receive your payments and its security interest in your aircraft." The letter instructed Integrated to call CIT with any future questions. The letter did not address the issue of Chase's obligation under the Loan Commitment to finance replacement engines. After receiving this notice, Integrated began making its monthly loan payments to CIT instead of to Chase.

### C. Funding for the Engines.

Immediately after receiving the June 25, 1991, notice, Integrated's consultant Lee Sixta contacted CIT on behalf of Integrated regarding the financing for replacement engines. CIT initially informed Mr. Sixta that it would check its files and call him back but that "[w]hatever Chase committed to, we bought the file, and that's what we'll do." CIT did not call Mr. Sixta back, however. Mr. Sixta again called CIT and was informed that a copy of the Loan Commitment with Chase was not transferred to CIT. Integrated was also unable to locate a copy of the Loan Commitment. Apparently, at that time, neither CIT nor Integrated contacted Chase to see if it had retained a copy of the Loan Commitment. Because CIT did not have a copy of the Loan Commitment, it said it would not finance the replacement engines.

Integrated and CIT then explored the possibility of refinancing the entire airplane. In January, 1992, Integrated requested refinancing of the first loan from CIT and "approximately $225,000 in new funds to complete the following: major corrosion inspec-

tion—voice recorder—paint and interior—major update maintenance." At that point in time, Integrated planned to purchase the engines for cash and, thus, did not request funding from CIT for the replacement engines. CIT declined this request to refinance.

For the next several months, Integrated continued to work on the airplane, including conducting a corrosion inspection. In early 1993, Mr. Bennett, President of Integrated, contacted CIT about financing the engines. CIT again refused to finance the engines because there was nothing in their files which indicated that they were obligated to provide this financing. Mr. Bennett also requested a copy of Integrated's loan files from CIT, but CIT declined this request.

In March, 1993, Integrated "drew the line in the sand" by ceasing to make payments to CIT on the promissory note. Integrated maintained that it was ready and able to continue making payments on its obligation to CIT. Integrated refused to do so, however, because of CIT's refusal to finance the engines and because of CIT's refusal to give Integrated a copy of its loan file. When CIT again informed Mr. Bennett in April, 1993, that it did not have a copy of the Loan Commitment, Mr. Bennett for the first time said he would send a copy of the Loan Commitment to CIT.

As of May 28, 1993, no copy of the Loan Commitment had yet been forwarded to CIT. CIT sent a demand letter to Integrated in an effort to persuade Integrated to remedy its past due status, but Integrated did not make any payments on the loan to CIT. On June 11, 1993, CIT declared a default under the note, accelerated the balance due and demanded full payment by June 21, 1993.

It was not until June 14, 1993, after the loan was declared in default, that Integrated faxed a copy of the Loan Commitment to CIT. Integrated also sent a letter stating that it would not make any further monthly payments on the promissory note until CIT acknowledged an obligation to fund the replacement engines under the Loan Commitment.

Only on the following day, June 15, 1993, was Chase formally informed of Integrated's request for financing for the airplane engines and the ensuing dispute between Integrated and CIT. On that date, CIT contacted Chase and faxed Chase a copy of Integrated's June 14, 1993, letter, together with a copy of the Loan Commitment. Neither CIT nor Integrated requested funding from Chase at that time.

CIT sent its final notice of default to Integrated on June 24, 1993. On July 7, 1993, Integrated advised CIT that Integrated had located suitable engines and demanded immediate funding under the Loan Commitment. On the same day, CIT filed a replevin bond. By an *ex parte* court order of July 7, 1993, CIT was granted temporary possession of the airplane. CIT took custody of the airplane on July 14, 1993.

Integrated filed suit against Chase for breach of the Loan Commitment on July 16, 1993, as a third-party claim in the CIT lawsuit against Integrated for default under the loan. Integrated's suit against Chase included separate claims for breach of contract, breach of fiduciary duty, negligent omission of a material fact, negligent misrepresentation, negligent administration of a loan commitment, and negligence for failing to advise Integrated that Chase was still obligated under the Loan Commitment.

Although it filed suit against Chase on July 16, 1993, Integrated did not make a demand upon Chase to fund the replacement engines in accordance with the Loan Commitment until July 20, 1993. Chase refused to fund the replacement engines on the basis that by that time Integrated was in default on the first loan and Integrated thus no longer had the airplane on which to place the engines as the airplane was in the custody of CIT.

Integrated's claims against Chase were tried to a jury in the same proceeding that CIT's claims were tried against Integrated. The trial court granted a directed verdict for Chase on all of Integrated's negligence claims except Integrated's claim that Chase negligently failed to advise Integrated that Chase was still obligated under the Loan Commitment. That claim was submitted in Jury Instruction No. 19, which stated:

In your verdict on Integrated's claim for negligence against Chase, you must assess a percentage of fault to Chase if you believe:

First, Chase failed to advise Integrated that Chase retained the commitment to loan Integrated an additional $200,000 for the purchase of mid-time engines, and

Second, Chase, was thereby negligent, and

Third, as a direct result of such negligence, Integrated sustained damage.

The court also submitted Integrated's breach of contract claim against Chase. The jury returned verdicts in favor of Integrated and against Chase: (1) on the breach of contract claim in the amount of $294,412.65, and (2) on the negligence claim in the amount of $175,000.00. Integrated's recovery under the negligence claim was reduced by 15% to $148,750.00 to reflect the jury's assessment of 15% fault attributable to Integrated. The jury also awarded CIT permanent possession of the airplane and damages in the amount of $427,797.05 against Integrated on the promissory note.[2]

Chase filed a post-trial JNOV Motion on Integrated's breach of contract and negligence claims. As to the contract claim, Chase contended that Integrated had not made a submissible case because: (1) the demand for financing was untimely; (2) Integrated had not satisfied all conditions precedent to the Loan Commitment, which were "coterminous" with the terms of the first loan, in particular the existence of an airplane on which to place the engines; and (3) Integrated's claim for breach of contract relied on an absurd construction of the Loan Commitment.

Chase also contended in its JNOV Motion that Integrated did not make a submissible case on the negligence claim. Most importantly, Chase contended that it did not have

a legal duty to advise Integrated that Chase was still obligated under the Loan Commitment.

The trial court sustained Chase's JNOV Motion with respect to Integrated's breach of contract claim and denied Chase's JNOV Motion with respect to the negligence claim. Each of these rulings is appealed.[3]

## II. CHOICE OF LAW

■ The general rule in Missouri is that, in the absence of an express agreement by the parties, the court will look to the factors set forth in the Restatement (Second) of Conflict of Laws § 188, in determining what law to apply to a contract claim. *Hartzler v. American Family Mut. Ins. Co.*, 881 S.W.2d 653, 655 (Mo.App.1994). The factors set out in Section 188 include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188 (1971).

■ Missouri applies the most significant contacts test set forth in Restatement (Second) of Conflict of Laws § 145, in determining what law to apply as to negligence claims. *Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. banc 1992). The factors to be considered under Section 145 include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

---

**2.** CIT is not a party to this appeal.

**3.** Both parties raise additional issues on appeal which we do not need to address because we find these two issues dispositive. The other issue raised by Integrated is that it was plain error to instruct the jury to compare the fault of Integrated and Chase on Integrated's claim of negligence because the principle of comparative fault does not apply to a case involving only economic

damages. The other issues raised by Chase are that: (1) the trial court erred in submitting Jury Instruction No. 19 on the issue of negligence because it is an improperly modified instruction for negligent omission; (2) the trial court erred in submitting Jury Instruction No. 20 because it improperly stated the negligence standard; and (3) Integrated is not entitled to judgment on both the contract and negligence claims because it would result in double damages.

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts § 145 (1971).

█ The Loan Commitment is silent as to what state law to apply, but both parties take the position that Kansas law should apply. We agree that under the tests set out in Sections 188 and 145, Kansas has the most significant relationship to both the contract and tort claims, and its law should apply.[4] Accordingly, we will apply the substantive law of Kansas in analyzing both the breach of contract and negligence claims.

### III. THE TRIAL COURT PROPERLY GRANTED JNOV TO CHASE ON INTEGRATED'S BREACH OF CONTRACT CLAIM

Integrated contends the trial court erred in sustaining Chase's JNOV Motion on the breach of contract claim.

#### A. Standard of Review.

█ A defendant's JNOV motion should be granted where the plaintiff failed to make a submissible case. *McCulley v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 121, 122 (Mo.App.1984). On appeal of grant of JNOV the "evidence is viewed in the light most favorable to the plaintiff and plaintiff is given the benefit of reasonable inferences to be drawn therefrom." *Dominick v. Sears, Roebuck & Co.*, 741 S.W.2d 290, 293 (Mo.App. 1987). In addition, the appellate court will affirm the judgment of the trial court if the decision is supported by any one of the grounds set forth in the JNOV motion. *Id.*

#### B. The Existence of an Airplane on Which to Place the Engines is an Implied Condition Precedent of the Loan Commitment Which Integrated Failed to Satisfy.

█ Chase contends JNOV was properly granted in that it was not required to honor

the terms of the Loan Commitment because, among other reasons, Integrated had not fulfilled the implied condition precedent of the existence of an airplane on which to place the engines. In *Wallerius v. Hare*, 194 Kan. 408, 399 P.2d 543 (1965), the Kansas Supreme Court explained conditions precedent as follows:

> A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main action. It is one without the performance of which the contract, although in form executed and delivered by the parties, cannot be enforced.

*Id.*, 399 P.2d at 547. In other words, if a contract contains a condition precedent, the condition must occur or be performed before the contract takes effect and is enforceable. If the condition does not occur or is not performed the other party may withdraw, but in order to escape liability the withdrawing party must affirmatively show that the "withdrawal from the contract occurred because of the condition's failure." *Barbara Oil Co. v. Patrick Petroleum Co.*, 1 Kan. App.2d 437, 566 P.2d 389, 393 (1977).

█ It is uncontested that the Loan Commitment does not contain an express condition that Integrated be in possession of the airplane at the time that the financing for the engines was sought, and it is a well-established principle of contract construction that "when a contract is clear, the court is bound to enforce its terms as they are written." *Camden Iron & Metal, Inc. v. Bomar Resources, Inc.*, 719 F.Supp. 297, 305 (D.N.J. 1989) (citations omitted).

█ On the other hand, Restatement (Second) of Contracts § 204 (1981), notes that "[w]hen the parties to a bargain ... have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the

---

4. While the proceeding below was tried in Missouri and the airplane was kept in Missouri at the time of the replevin action, the Loan Commitment was negotiated, executed and performed in Kansas; the Loan Commitment was issued out of Chase's office in Wichita, Kansas; Integrated is a Kansas Corporation which, at the relevant time, had its principal office in Kansas; and the injury occurred in Kansas.

circumstances is supplied by the court." *Accord Camden*, 719 F.Supp. at 305 (when the "four corners of the parties written agreement fail to provide for the dispute at hand, it is up to the court to fill the gap left by the contracting parties").

As *Camden* further explained:

Terms, although not specifically set forth, may be implied where the parties must have intended them because they are necessary to give business efficacy to the contract as written, or to give the contract an effect which the parties, as fair and reasonable, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto.

*Id.* at 306 (citations omitted).

While no Kansas cases have applied this principle to facts similar to the instant case, the Supreme Court of Iowa addressed an almost identical issue in *Taylor Enterprise, Inc. v. Clarinda Production Credit Asso.*, 447 N.W.2d 113 (Iowa 1989). In *Taylor*, the borrowers sued their lender for breach of a written loan commitment. The lender had failed to loan the borrowers certain funds as stated in the loan commitment following default by the borrowers on certain other loans with the lender. While the loan commitment did not contain any express provision which conditioned continued funding on the borrowers' good credit, the court held that such a condition would be implied, stating:

It is true that there is no provision in the various instruments which excuses [lender's] performance of their promises to make a [second] loan should plaintiffs default on their notes. There may be an implied contract, however, on a point not covered by the expressed contracts.

*Id.* at 116.[5]

Similarly, we hold that, while the requirement that there be an airplane on which to place the engines was not specifical-

ly set forth, such a term was implied in order to give business efficacy to the Loan Commitment. The financing approval in the Loan Commitment said it was to occur "under the terms and conditions outlined below." The Loan Commitment specified that financing of $350,000 was approved for a "1970 Rockwell Sabre 60. S/N 306–62 N62CF." Thus, the funds provided by Chase could only be used to purchase this airplane. The Loan Commitment also stated that "[a]dditional credit has been approved for the cost of two (2) mid-time engines not to exceed $200,000.00." This additional financing was explicitly limited to mid-time engines to be purchased for use on the airplane purchased with the earlier financing. Thus, the commitment to loan funds to purchase the engines was conditioned upon the prior purchase and possession of the 1970 Rockwell Sabre plane. As Integrated no longer had a right to possession of this plane, the condition was not met and Chase was not obligated to perform its promise to provide financing for the engines. Moreover, the requirement of possession of an airplane gives the contract an affect which the parties presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto.

Integrated nevertheless contends that it could not comply with the condition that it possess the airplane because it was hindered from doing so by Chase's failure to notify Integrated that Chase retained the Loan Commitment for the engines. Integrated contends that this led to its stopping payments on the first loan and the resulting repossession. To the extent that Integrated is arguing that it had the right to breach the first loan by stopping payments because Chase breached the Loan Commitment first, Chase had no contractual duty under the Loan Commitment to notify Integrated that Chase retained the obligation to finance the engines.[6] Therefore, Chase had not breach-

---

5. While the court in *Taylor* held that this was an issue for the jury because of other unresolved factual questions, it is well-established that construction of a contract, as required by the present case, is a matter of law to be resolved by the court. *W–V Enterprises v. Federal Sav. & Loan*

*Ins. Corp.*, 234 Kan. 354, 673 P.2d 1112, 1119 (1983).

6. Any claim that Chase otherwise had a legal duty to notify Integrated is addressed below un-

ed any contractual obligations to Integrated at the time that Integrated stopped making payments under the first loan. Moreover, by the time that Integrated requested funding of the engines under the Loan Commitment from Chase, Integrated had already stopped making payments of the first loan and the airplane had been repossessed by CIT. Because we find that possession of the airplane was a condition precedent of the Loan Commitment which was not satisfied by Integrated at the time it made demand on Chase, Chase was under no obligation to provide financing for the engines to Integrated.

■ While it is not necessary to address the remainder of the grounds asserted by Chase in support of the trial court's judgment, we note that the other grounds raised by Chase would also have supported the trial court's judgment. Chase argued that any obligation it otherwise may have had to fulfill the $200,000.00 Loan Commitment for the engines ended at the time the original $350,-000.00 loan was accelerated and went into default which occurred no later than June 21, 1993. At that point, the time for paying off the first loan had arrived; the loan period had terminated.

As noted in the statement of facts, the Loan Commitment document provided that the additional $200,000.00 for the engines would "be funded under a separate promissory note and will be coterminous with the original loan." The parties disagreed as to whether the word "coterminous" meant that both loans would be subject to all of the same terms and conditions. However, the testimony clearly showed that the term meant, at a minimum, that the payment period for the original loan and the loan for the engines would end or terminate at the same time.[7]

As just noted, by the time that Integrated made demand upon Chase for financing of the engines, the original loan had already been accelerated and was in default. Therefore, the repayment schedule for the second loan, which was coterminous with the repayment schedule for the first loan, had already expired by the time that Integrated requested financing from Chase for the engines. It would have been futile to loan money after the loan was already due to be repaid under the Loan Commitment. The law will not require the performance of a futile act.

Moreover, it is well-established that "where a contract does not specify the time of performance ... a reasonable time will be implied." *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 822 P.2d 64, 67 (1991). It would be unreasonable for this Court to hold that a demand which was made for engines for an airplane after the loan recipient no longer possessed the airplane was made within a reasonable time. *Arnold*, 822 P.2d at 68 (holding that demand made after limitations period was unreasonable as to time).

Finally, the construction argued by Integrated would lead to an absurd result. In its simplest terms, Integrated is making a demand upon Chase for the financing of two replacement engines for an airplane on which Integrated has defaulted and which was no longer in Integrated's possession. Integrated speculates that with the engines it could have sold the airplane and paid off its debt and made a profit. This is only speculation. It offered no evidence of buyers or that it could still repossess the airplane. Moreover, elsewhere in its appellate brief it argued that

---

der Integrated's *negligence* claim against Chase. It is not part of any contract duty.

7. When asked what "coterminous" meant, Mr. Johnson, who prepared the Loan Commitment on behalf of Chase, testified that "coterminous" meant that the termination dates for the first and second loans were the same. He testified as follows:

A: It means that it would have been done under the same terms and conditions as the original loan.
Q: The same terms and conditions being what, same interest rate?

A: Same length of time, same balloon period.

\* \* \* \* \* \*

Q: Is what you're saying, that 4 years from the funding of the engines, because the original loan was 4 years, that there would be 4-year financing on the engines as well?
A: No.
Q: Explain what you do mean.
A: I mean that if at 12 months they requested financing for the engines, the engines' loan would balloon in 36 months.
Q: 36 months or 48 months from the original $351,000 loan?
A: Correct.

it lost profits it would have made by retaining the airplane and leasing it for use by others. The inconsistencies of these two damage arguments is indicative of the speculative nature of the claim. In this situation, to hold that the Loan Commitment did not require the existence of airplane on which to place the engines would lead to an absurd result and we attempt to avoid absurd results when interpreting contracts. *Tumlinson v. Norfolk & W.R. Co.,* 775 S.W.2d 251, 252 (Mo.App.1989).

For all of these reasons, we affirm the trial court's grant of Chase's JNOV Motion as to Integrated's breach of contract claim.

## IV. *THE TRIAL COURT ERRED IN NOT GRANTING CHASE JNOV ON INTEGRATED'S NEGLIGENCE CLAIM BECAUSE CHASE DID NOT HAVE A LEGAL DUTY TO PROVIDE INFORMATION TO INTEGRATED*

Chase contends on cross-appeal that the trial court erred in denying its Motion for JNOV as to Integrated's negligence claim because the latter failed to state a claim upon which relief could be granted. Jury Instruction No. 19, which submitted the issue of negligence to the jury, stated that Chase was negligent for failing "to advise Integrated that Chase retained the commitment" to fund the second loan. Chase contends, however, that Chase did not have a legal duty to inform Integrated that it was still obligated under the Loan Commitment to fund the replacement engines, and absent a duty there can be no negligence.[8]

In order for negligence to be actionable, Integrated was required to establish: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure. *North Cent. Kansas Production Credit Asso. v. Hansen,* 240 Kan. 671, 732 P.2d 726, 731 (1987). The existence of a legal duty is a question of law to be determined by the court. *Taylor v. Phelan,* 799 F.Supp. 1095, 1099 (D.Kan.1992), *aff'd,* 9 F.3d 882 (10th Cir.1993).

It is important to point out that Integrated does not allege that Chase committed an affirmative misrepresentation. Rather, Integrated argues that Chase is liable because of its failure or omission to state that it had not transferred the loan commitment to CIT and asserts a variety of interrelated bases on which such a duty on the part of Chase should be held to have arisen. In a case such as in which the suppression or omission of a fact is alleged, the plaintiff must establish a "legal or equitable obligation to communicate [by defendant] and in respect of which he could not be innocently silent." *Du Shane v. Union Nat'l Bank,* 223 Kan. 755, 576 P.2d 674, 679 (1978). This legal duty to communicate "must arise from a relationship existing between the parties when the suppression or concealment is alleged to have occurred." *Id.* Such a relationship may arise between contracting parties when there is a disparity of bargaining powers or of expertise, or when the parties are in a fiduciary relationship to one another. *Id.*[9]

While there is no precise definition of what constitutes a fiduciary relationship, the Kan-

---

**8.** Chase also contends that the trial court erred in denying its Motion for JNOV because: (1) Integrated failed to present evidence of the applicable standard of care; (2) Integrated failed to prove that Chase caused the damages which Integrated claimed it suffered; and (3) Integrated's claim was barred by the applicable statute of limitations. Because we hold that the trial court did commit error in not granting Chase JNOV and reverse the judgment in favor of Integrated on this ground, we will not address these remaining contentions of error.

**9.** Chase cites *Ford Motor Credit Co. v. Suburban Ford,* 237 Kan. 195, 699 P.2d 992 (1985), *cert.*

*denied,* 474 U.S. 995, 106 S.Ct. 409, 88 L.Ed.2d 360 (1985), in support of its contention that a party cannot have both a negligence claim and a breach of contract claim. While *Suburban Ford* did hold that there was no negligence claim separate from the contract claim in that case, later action by Kansas Supreme Court leads to the conclusion that this holding is limited to cases in which the plaintiff seeks damages under a tort claim which are specifically denied or negated by contract. *See* Rossi, *Lender Liability in Kansas: A Paradigm of Competing Tort and Contract Theories,* 29 Washburn L.J. 495, 517–521 (1990).

sas courts consider several general principles in making the determination of whether a fiduciary relationship exists, including:

A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another.* A fiduciary is a person with a duty to *act primarily for the benefit of another.* A fiduciary is in a position to have and exercise, and does *have and exercise influence over another.* A fiduciary relationship implies a condition of *superiority of one of the parties over the other.* Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary.*

*Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235, 1241 (1982) (emphasis in original). Moreover, a party cannot "abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Id.,* 640 P.2d at 1243–44.

▆▆▆ It is well-established in Kansas that generally the lender-borrower relationship does not create any special relationship with commensurate duties. *Daniels v. Army Nat'l Bank,* 249 Kan. 654, 822 P.2d 39, 42 (1991). *See also Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235, 1243 (1982) ("[t]o adopt such a standard would put an intolerable obligation upon banking institutions and convert ordinary day-to-day business transactions into fiduciary relationships where none were intended or anticipated"). The facts presented in this case do not take it out of this general rule.

There is no disparity in bargaining powers or expertise between the parties. Both parties are sophisticated financial companies fully capable of understanding their rights and duties under a contract. Mr. Bennett testified that over the years he has been involved with "hundreds" of large loans through Integrated. Moreover, Integrated retained the services of Mr. Sixta, a consultant experi-

enced in corporate aircraft financing, to locate and negotiate the financing on behalf of Integrated. Mr. Sixta negotiated the financing with Chase and contacted CIT regarding financing for the replacement engines. His expertise in this area certainly did not place Integrated at a disadvantage to Chase.[10]

Integrated emphasizes the fact that Chase sold its commercial aircraft loan department only weeks after entering into the long-term loan agreement with Integrated. However, Chase made no affirmative representation that it would act in the interest of Integrated in its day-to-day business activities and communications. A party cannot "unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Denison State Bank,* 640 P.2d at 1243–44.

Integrated now argues that if the theory it submitted did not provide a basis for recovery, then the Court should affirm on one of the other negligence theories it pleaded but as to which the trial court granted Chase a directed verdict. These theories included: (1) breach of fiduciary duty; (2) negligent omission of a material fact; (3) negligent misrepresentation; and (4) negligent administration of the Loan Commitment.

In effect, Integrated asks this Court to grant *it* JNOV on appeal on theories never submitted to the jury. Resolution of any of these claims in favor of Integrated would have depended on the resolution of issues of fact and, thus, we could not do so, nor could the trial court below have done so. Even more basically, however, each of these theories suffers from the same flaw as the one submitted: they all depend on the premise that Chase owed a duty to Integrated to reveal certain information and negligently failed to act. Yet, as demonstrated above, Chase did not owe Integrated a fiduciary duty and Integrated did not identify any other basis on which Kansas law would impose an affirmative duty on Chase to reveal

**10.** The only Kansas case which Integrated cites in support of its contention that the Chase had an affirmative duty to advise it is distinguishable. In *Pedi Bares, Inc. v. First Nat'l Bank,* 223 Kan. 477, 575 P.2d 507 (1978), the court did hold that

the lender was under a duty to proceed without negligence in contacting borrower's customers concerning the status of their accounts. The legal duty in that case, however, was imposed by the Uniform Commercial Code.

additional facts. In the absence of an allegation of an affirmative misrepresentation by Chase, there simply was no duty and, thus, there was no actionable negligence by Chase.

Finally, we note that the information which Chase allegedly failed to provide Integrated is information which Integrated could have discovered by reasonable diligence. Integrated had a copy of the Loan Commitment in its own file. Integrated, however, did not locate its copy of the Loan Commitment and provide it to CIT until *after* it ceased making payments under the loan to CIT, and after its loan was in default. As soon as it sent the Loan Commitment, CIT contacted Chase and Integrated and Chase began communications. Integrated, however, made no demand on Chase until after the airplane was in CIT's possession.

For these reasons, the judgment of the trial court granting Chase's Motion for Judgment Notwithstanding the Verdict as to Integrated's breach of contract claim is affirmed. The judgment of the trial court denying Chase's Motion with respect to Integrated's negligence claims is reversed and remanded with directions to enter Judgment Notwithstanding the Verdict in favor of Chase on Integrated's negligence claims.

All concur.