**PEPPERTREE TERRACE, Appellant/Plaintiff**

**v.**

**CHERYL WILLIAMS, Appellee/Defendant**

S. Ct. Civ. No. 2007-099

Supreme Court of the Virgin Islands

July 1, 2009

225

ROCHELLE M. BERMUDEZ, ESQ., GERALD T. GRONER, Attorney at Law, P.C., St. Croix, USVI, *Attorney for Appellant.*

VINCENT COLIANNI II, ESQ., Colianni & Colianni, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.* SWAN, *Associate Justice, concurs.*

## OPINION OF THE COURT

(July 1, 2009)

CABRET, J. Cheryl Williams owns a mobile home located in the Peppertree Terrace mobile home community on St. Croix. Peppertree Terrace sued Williams in the Small Claims Division of the Superior Court alleging that she owed several thousand dollars in past due rent for occupying the lot in the community. After a bench trial, the trial court found that Peppertree Terrace's claim lacked merit and dismissed the claim. Peppertree Terrace filed this appeal asserting that the trial court erred in dismissing its claim because the evidence presented at trial showed that Williams failed to pay past due rent. We agree with Peppertree Terrace that the trial court erred in dismissing its claim and accordingly reverse the trial court's dismissal.

## I. FACTS AND PROCEDURAL HISTORY

The record shows that Williams owns a mobile home located on lot number fifty-one, Peppertree Terrace ("Subject Property"). Although Williams owns her mobile home, she does not own the Subject Property, and at trial she testified that when she purchased the home, she understood that she would pay Peppertree Terrace a "maintenance fee" for the lot.[1]

---

[1] Although Justice Swan's concurring opinion states that Williams relocated her mobile home to Peppertree Terrace's property, we have not found any support for this finding in the

(App. at 29.) According to Williams, shortly after she purchased the mobile home, someone in the Peppertree Terrace office telephoned her to inform her about the amounts she was required to pay:

> When I bought the place, I got a call about three weeks later telling me, do you know you are supposed to pay [a] maintenance fee; and I said, yes, how much; and she told me [$]361 and that was it. That's the only thing we've ever had. So, what I was doing was I was just paying on it, paying on it, paying on it . . . .

(App. at 32.) In addition to the monthly fee, which Williams was told would cover grass cutting, water, and security, Peppertree Terrace also charged a fee for late payments.[2] Williams and Peppertree Terrace did not have a written agreement providing for Williams' occupancy or any of these payments, and Williams testified that she complained to Peppertree Terrace that the amounts being charged were excessive for the services she received.

Peppertree Terrace's manager explained at trial that, although Williams owned the mobile home, she was required to pay rent "[f]or the lot that the trailer is on." (App. at 28.) The manager thus characterized the amount charged for the lot as a "lot rental fee," (App. at 36) and she testified that the amount due for rent each month was $385.00. The manager presented the trial court with monthly account statements purportedly evidencing the amounts Williams owed Peppertree Terrace. The first monthly statement is from May, 2006 and shows that as of March 31, 2006, Williams had a past due balance forward of $1,590.00. The May 2006 statement also reflects the only payment evidenced by any of the statements: a $550.00 remittance by Williams in April, 2006. The manager for Peppertree Terrace testified that this was the last time Williams paid rent. The account statements further reflect that late payment fees were initially assessed against Williams at the rate of $25.00 per month, that the late payment fee was increased to $50.00 per month in May, 2006, and that beginning in February, 2007, the late payment fees were further increased on a monthly basis and eventually included interest

record. Rather, it appears that when Williams purchased the mobile home, it was already located on the Subject Property in Peppertree Terrace.

[2] It is unclear from the record when and how Peppertree Terrace informed Williams that she would be liable for late fees.

charges as well. According to these statements, as of July, 2007, the month of the trial, Williams owed Peppertree Terrace $8,111.79.

Williams did not dispute that she was indebted to Peppertree Terrace in some amount. Upon being questioned by the trial judge about the amount she owed, Williams testified:

> I don't know how [the property manager] came up with the figures. I know she needs to be paid. That's how we are coming to court, and we can't come up to agreement on how much and she can't make the decision as being the manager. Someone has to make the decision being over her because this is the fourth time we are coming [to court] . . . .
> I guess that's why the money is so high. It's been almost a year [sic].

(App. at 31.) (Paragraph indention omitted). Although the account statements presented to the court indicate that they were sent to Williams at a post office box, and Williams acknowledged that she received a letter on May 8, 2006 stating that she was in arrears in the amount of $1,885.00, Williams also testified that she never received anything in writing telling her the amount she was supposed to be paying. Williams acknowledged, however, that "[t]hey told [her] over the phone" the amounts she was supposed to be paying. (App. at 32.)

Upon receiving this evidence, the trial judge remarked on the difficulty he was having resolving the case due to the conflicting testimony of the parties:

> I'm hearing two different things. [Peppertree Terrace is] talking about rental fee still, but at the same token, Ms. Williams owns her unit. So, how can she pay rent for something that she owns?
>
> . . . .
>
> [T]he problem I'm having here is it would have been easier if both you and Ms. Williams were speaking in the same terms, but you're not. She's talking maintenance fees; you are talking rent. What does your record show that establish [sic] basically what she's supposed to be paying and what it's supposed to be for? . . . Why would she want a lease if she owns her unit?

(App. at 36, 38.) The Peppertree Terrace manager again explained that it is a lot rental fee and that Williams did not want a lease, although leases prevent rent increases during the year, and that without a lease, the rent can be

increased by Peppertree Terrace at any time. The trial judge responded: "I'm sorry, ma'am. This seems a little bit oily. Case dismissed." (App. at 39.) Peppertree Terrace subsequently filed this appeal.

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests the Supreme Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." In considering the appeal of Peppertree Terrace, our standard of review is as follows:

> The standard of review for this Court in examining the Superior Court's application of law is plenary. Findings of fact are reviewed on appeal under a clearly erroneous standard of review. The appellate court must accept the factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.

*St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007) (citations and quotation marks omitted). In addition, because this was a small claims matter, we should remain mindful that the goal of the trial judge was "to do substantial justice between the parties." SUPER. CT. R. 64.

## III. DISCUSSION

The trial court clearly erred in dismissing Peppertree Terrace's claim. The trial court was apparently confused as to why Williams would want to rent the Subject Property when she owned her mobile home, and this confusion seemed to be compounded by the varying characterizations of the monthly fee as a "maintenance fee" and a "lot rental fee." But however one characterizes the fee, it is undisputed that: (1) Williams' mobile home was located on the Subject Property in Peppertree Terrace; (2) Williams knew she was required to pay Peppertree Terrace some amount, on a monthly basis, for occupying the Subject Property; and (3) Williams continued to occupy the Subject Property with her mobile home after being informed of the monthly fee.

It is unclear why the trial court disregarded the fact that Williams was not renting her mobile home, but rather the land on which the home was

situated. Again, there does not seem to be any dispute that Williams occupied the Subject Property or that Peppertree Terrace was charging Williams a monthly fee for this occupancy and the related services provided by Peppertree Terrace. As is discussed below, the transfer of possession of the Subject Property created a landlord-tenant contractual relationship between Peppertree Terrace and Williams under an oral lease with a month-to-month tenancy.[3]

Before discussing how the lease in this case was created, we note that, as a general rule, a landlord-tenant relationship can arise from an agreement under which one person, the landlord, gives another person, the tenant, a present right to possess a plot of land for a fixed period of time. *See generally* RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT §§ 1.1-1.4 (1977);[4] *see also* 49 AM. JUR. 2D *Landlord and Tenant* § 1 (West Supp. 2008) ("The relation of landlord and tenant generally arises from an agreement, or lease, which may be either express or implied, pursuant to which one person — the tenant or lessee — enters into possession and occupancy of the premises of another — the landlord or lessor — for a consideration, usually the payment of rent."). Under the Restatement (Second) of Property, "[a] landlord-tenant relationship can be created orally if the duration of an oral lease does not exceed the period specified in the controlling Statute of Frauds." RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT §2.1 (1977). In the Virgin Islands, the Statute of Frauds, which generally requires that certain leases be in writing and executed with specified formalities, applies only to leases with terms exceeding one year. *See* V.I. CODE ANN. tit. 28, §§ 241, 242 (1996).

---

[3] Although certain aspects of contract law govern the landlord-tenant relationship, *see Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1031 (2d Cir. 1995) (recognizing that "[t]he legal relationship between landlords and tenants is a strange hybrid of contract and property law"), we believe that under the facts of this case, the parties' relationship and the obligations arising from that relationship should be analyzed under the applicable provisions of the Restatement (Second) of Property, Landlord and Tenant (1977).

[4] Because there are no local laws governing the question, we turn to the Restatement pursuant to title 1, section 4 of the Virgin Islands Code which provides:

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

█ Because the lease at issue in this case was for a term of less than one year, it could have been created orally. To be clear, it does not appear that Williams and Peppertree Terrace ever discussed, in express terms, the duration of Williams' lease. Rather, the evidence at trial showed only that Peppertree Terrace told Williams she was required to pay a monthly fee, and Williams acknowledged that she needed to pay the fee. The parties' dispute was not whether a monthly fee was due; they merely provided different characterizations of the fee and disputed the amount of the fee.

█ This agreement that a monthly fee was due created a monthly tenancy under the Restatement (Second) of Property. Specifically, the Restatement provides:

> The parties may expressly state that the lease shall continue from period to period or their agreement may be apparent from the circumstances. Where the parties enter into a lease of no stated duration and periodic rent is reserved or paid, a periodic tenancy is presumed. The period thus presumed is equal to the interval for which rent is reserved or paid to a maximum periodic tenancy of year to year.

RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT § 1.5 cmt. d (1977); *see also id.* §1.5 cmt. d, illus. 2 ("L leases a residence to T to commence July 1, at a rent of $100 per month. No duration is specified. The lease creates a periodic tenancy continuing for successive periods of one month until terminated by proper notice."). In this case, although Williams and Peppertree Terrace disputed the amount of the fee, it is undisputed that the fee was to be paid monthly. Therefore, the circumstances created a month-to-month tenancy that continued until it was properly terminated by one of the parties.[5] *See id.* § 1.5 ("A landlord-tenant relationship may be created to endure until one of the parties has given the required notice to terminate the tenancy at the end of a period."). There was no evidence pre-

---

[5] Contrary to Justice Swan's concurring opinion, the oral lease creating a month-to-month tenancy did not violate the Statute of Frauds merely because it continued in effect for more than one year. "It is well settled that the oral contracts invalidated by the Statute because they are not to be performed within a year include only those which *cannot* be performed within that period." 9 RICHARD A. LORD, *Williston on Contracts* § 24-3 (4th ed. 1999) (emphasis in original). Because a monthly tenancy is, by definition, performed within one year, it does not violate the Statute even if successive one-month terms continue beyond one year. *See, Hamilton v. Tanner*, 962 So. 2d 997, 1002 n.6 (Fla. Dist. Ct. App. 2007); *Carter v. Schick*, 817 S.W.2d 238, 239-40 (Ky. Ct. App. 1991).

sented at trial that either of the parties terminated the lease during the period in question. To the contrary, the undisputed evidence showed that Williams' knew when she purchased the mobile home that she was required to pay a monthly fee and that she continued to occupy the Subject Property up to the time of trial. Accordingly, the trial court's dismissal of Peppertree Terrace's claim, on the ground that the parties' agreement was a little too "oily" to be enforceable, was clearly erroneous.

 Although we conclude that Williams was a tenant under an oral month-to-month lease, and that she was required to pay some amount of monthly consideration for her occupancy of the Subject Property, we are not able to determine the amount of that consideration. The evidence presented at trial showed that Peppertree Terrace told Williams that the fee for the Subject Property was $361.00 per month if you believe Williams, or $385.00 if you believe the Peppertree Terrace manager. Because the trial court apparently concluded that there was no lease, it did not query further as to the amount of consideration that was due. From the cold record before us, we cannot establish which of the two amounts — $361.00 per month or $385.00 per month — the parties agreed would be due to Peppertree Terrace for Williams' occupancy of the Subject Property or whether the parties agreed that penalties would apply for late payments. We can only say with certainty that Peppertree Terrace did not gratuitously give Williams possession of the Subject Property, that Williams knew she was required to pay at least $361.00 per month to Peppertree Terrace for occupying the Subject Property, and that the trial court did not do the parties substantial justice by dismissing the action. *See* RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT §12.1(1) (1977) ("Except to the extent the tenant is legally excused from doing so, there is a breach of the tenant's obligation if he fails to pay the rent reserved in the lease on or before the date the rent is due."); *id.* §12.1(2)(a) ("Except to the extent the parties to a lease validly agree otherwise, if there is a breach of the tenant's obligation to pay the rent reserved in the lease, the landlord may: (a) recover from the tenant the amount of the rent that is due . . . ."); *see also id.* §12.1 cmt. m ("The remedy generally available [for nonpayment of rent] is a suit at law to obtain a judgment for the amount of the rent and the collection of the rent by the usual procedure available to enforce a money judgment."); SUPER. CT. R. 64 (stating that in small claims actions trial court is required "to do

substantial justice between the parties."). For these reasons, we will reverse the trial court's dismissal of this case.

## IV. CONCLUSION

The undisputed evidence presented at trial established that a landlord-tenant relationship existed between Peppertree Terrace and Williams. The undisputed evidence also established that Peppertree Terrace and Williams agreed that the rental fee for Williams occupying the Subject Property was no less than $361.00 per month, and Williams testified that she was withholding payment of rent. In light of this evidence, the trial court did not do substantial justice between the parties and clearly erred in dismissing the case. Accordingly, the trial court's judgment is reversed and this matter is remanded to the trial court for further proceedings to determine the amount Williams owes to Peppertree Terrace.

## CONCURRING OPINION

SWAN, *Associate Justice*, concurs.

Peppertree Terrace ("Appellant") appeals the judgment of the Small Claims Division of the Superior Court, dismissing its action for breach of contract against Cheryl Williams ("Appellee"). For reasons enumerated below, I will reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Appellee is the owner of a trailer, which is located in Appellant's trailer park on St. Croix. Appellee asserts that when she relocated her trailer unto Appellant's lot, she believed the payments she made were monthly maintenance fees. Appellee further asserts that Appellant's employee told her in a telephone conversation that the maintenance fee was $361.00 monthly. According to Appellee, these maintenance fees were assessed as cost for water, security, and cutting grass at the trailer park. Appellee never denied owing money to Appellant. However, Appellee posited that although she owes some money to Appellant, she never agreed to pay $361.00 monthly, because that amount was too exorbitant for the services

Appellant provided at the trailer park.[1] Additional evidence that Appellee was responsible for maintenance fees and not rent is also manifested in the following dialogue:

> THE COURT: .... Have you received anything in writing that told you what amounts you were supposed to be paying?
>
> MS. WILLIAMS: No, no. They told me over the phone.
>
> THE COURT: When you say "they," who is the "they"?
>
> MS. WILLIAMS: The office. They called me. When I bought the place, I got a call about three weeks later telling me, do you know you are supposed to pay *maintenance fee*[?]; and I said, yes, how much[?]; and she told me 361 and that was it. That's the only thing we've ever had. ...

(Trial Tr., 9, July 31, 2007.)

Nonetheless, Appellant maintained that Appellee was paying for the lot. (Id. at 28.) Appellant's assertion prompted the trial court to make the following comments and observations, followed by a response from Appellant's agent, Ms. Gloria Samuel:

> THE COURT: .... Now, I'm hearing two different things. You are talking about rental fee still, but at the same token, [Appellee] owns her own unit. So, how can she pay rent for something that she owns? Now it makes more sense if I'm to take into account what she says because she is saying that it's actually maintenance fees.

---

[1] The following dialogue that transpired at oral argument clearly proves that the arrangement between the parties constituted maintenance fees, and not rent:

> THE COURT: And you saying that you were told you are paying a maintenance fee — supposed to pay a maintenance fee?
> MS. WILLIAMS: Yes.
> THE COURT: And how much was the *maintenance fee*?
> MS. WILLIAMS: They told me on the phone it was $361.
> THE COURT: $361?
> MS. WILLIAMS: Yes, a month.
> THE COURT: Okay.

(Trial Tr., 7, Jul. 31, 2007.)

MS. SAMUEL: It's a lot rental fee, your Honor.

THE COURT: All right. You are saying lot rental fee now, she is saying maintenance fee. What do you have in writing where basically shows me she obligated herself to pay rental fee for the lot versus maintenance fee?

MS. SAMUEL: I don't have anything, your Honor.

(Id. at 36.)

## II. JURISDICTION AND STANDARD OF REVIEW

Under title 4, section 32(a) of the Virgin Islands Code, this Court has jurisdiction over an appeal of a final order from the Superior Court. Pursuant to this statutory provision, Appellant filed this timely appeal from the Superior Court's judgment.

We review a trial court's decision for clear error in a breach of contract action. *United Steelworkers of Am. v. Rohm and Haas Co.*, 522 F. 3d 324, 330 (3d Cir. 2008).

## III. ISSUE

Whether the parties' business activities and relationship with each other created an enforceable agreement, even though they have no express, oral or written contract with each other.[2]

## IV. DISCUSSION

Appellant importunes this Court to reverse the trial court's judgment, which reversal would enable Appellant to collect the alleged debt from Appellee.

On October 26, 2006, Appellant filed a complaint against Appellee in the Small Claims Division of the Superior Court, titled "Action For Debt." The only allegation in the small claims complaint is that "[d]efendant is in arrears in [l]ot fees in the amount of $4,060.00." In the

---

[2] Appellant's brief states that the issue is "[w]hether the trial court's conclusion that Defendant Cheryl Williams was not indebted to Plaintiff Peppertree Terrace is clearly erroneous and unsupported by the evidentiary data?" (Appellant's Br. at 3.) Additionally, in Appellee's brief, Appellee states that the issue on appeal is "[w]hether an enforceable contract exists where there is no written or oral agreement on the essential term of price."

complaint's prayer for relief, Appellant explicitly and succinctly states its sole demand as "[w]herefore the said Plaintiff claims [j]udgment in the amount of $4,060, plus court costs and any amount in lot and/or late fees incurred prior to this case being called."

The allegation in the complaint is pivotal, because it denotes the nature of the case. Accordingly, the issue Appellant raises on appeal is not based upon landlord-tenant law for the following reasons. There is nothing in Appellant's one sentence complaint which states or remotely suggests that Appellant filed this case as a landlord-tenant action. Rather, it is an action for debt or for money due and owing. This case does not involve an eviction or an action for possession of a premise or a forcible entry and detainer action. The complaint in this action neither involves adjudicating nor an attempt to adjudicate any interest in or right to possess or occupy real property, including a leasehold interest.

Moreover, no written lease exists between the parties. If this case were based upon landlord-tenant law, it would have been assigned to the landlord and tenant docket in the Civil Division of the Superior Court. However, this case was filed as a small claims action for debt and appropriately assigned to the docket of the Small Claims Division in the Superior Court. Consequently, the case was adjudicated by the trial court as a small claims action for debt. The fact that lot fees, lot rent or maintenance fees are referenced by the parties does not metamorphasize an action for debt into a landlord tenant case. Rather, it is the intrinsic nature of the case or cause of action that determines the identity of the case.

Significantly, under Rule 37 of the Rules of the Superior Court, "[s]ummary proceedings between landlord and tenant for the recovery of possession of a premises and for forcible entry and detainer which are brought under the provisions of 28 V.I.C. § 781 *et seq.* shall not be joined with *any other* cause of action . . . [such as an action for debt as in this case]." (Emphasis added). Considering the pronouncements by both counsel during oral argument, both parties agreed that this case must be adjudicated on the theory of contract law. Therefore, I conclude that Appellant filed an action for debt under an alleged breach of contract claim. Later in this opinion, I explicate the nature of the contract.

At trial, when the court specifically asked Appellant whether there was a lease, Appellant's agent said, "no." (J.A. at 27.) Appellant's agent further explained that Appellee owns her trailer, and that she elected not

237

to have a lease. (*Id.*) Appellee never disputed the nonexistence of a written lease. Nonetheless, Appellant was obviously seeking to collect money allegedly accrued and owed by Appellee. Therefore, this case or action would be an action for debt.

Significantly, any attempt to create an oral lease would violate the Statute of Frauds. The RESTATEMENT (SECOND) OF PROPERTY (LANDLORD AND TENANT), § 2.1 (1977) provides:

> A landlord-tenant relationship can be created orally if the duration of an oral lease does not exceed the period specified in the controlling Statute of Frauds.

The salient provision of the Virgin Islands' Statute of Frauds is located in title 28, section 244(1) of the Virgin Islands Code, which provides:

> In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof is in writing, and subscribed by the party to be charged therewith, or by his lawful agent under written authority:
>
> > (1) An agreement that by its terms is not to be performed within one year from the making thereof.

The parties' arrangement whereby Appellee paid Appellant a monthly fee exceeded one year and the duration of the arrangement to pay the fee was for an indefinite period.

In Comment b, section 2.1, of the Restatement (Second) of Property (Landlord and Tenant), it is stated that "[a]n oral lease is valid if its initial period, measured from its making, does not exceed the specified period of the controlling Statute of Frauds." In the Virgin Islands, the specific period of the controlling Statute of Frauds on an oral contract or lease is one year. V.I. CODE ANN. tit. 28, § 242. The business records Appellant submitted as evidence that Appellee has a balance due reveal that Appellant began billing Appellee for services in late 2005. (J.A. at A-20.) Appellant continued to bill Appellee for services up until July 2007, which vastly exceeded one year. (Id. at A-6.) Buttressing the pronouncement in section 2.1, "[u]nder Virgin Islands law, any interest in property orally created . . . for a period of greater than one year is void and unenforceable under the Statute of Frauds." *Melendez v. Boschulte*, 950 F. Supp. 114, 117, 35 V.I. 192 (D.V.I. App. Div. 1997) (citing

*Fountain Valley Corp. v. Wells*, 98 F.R.D. 679, 19 V.I. 607, 615 (D.V.I. 1983)). Therefore, the purported oral lease between the parties is unenforceable under the pertinent section of the Restatement (Second) of Property (Landlord & Tenant).

The trial court concluded that Appellant had not proven its claim. Therefore, the trial court summarily dismissed the case and entered judgment for Appellee on August 1, 2007. Appellant filed this appeal, seeking a reversal of the judgment.

During oral argument, Appellant's counsel, Attorney Rochelle Bermudez, expressly argued that there was a contract between the parties.[3] In particular, the following dialogue transpired at oral argument:

> MS. BERMUDEZ: . . . We would argue that there was a contract in that all the essential terms of a contract were present.
>
> JUSTICE HODGE: What kind of contract was it? Was it a writ of land? Was it for — what type of contract was it?
>
> MS. BERMUDEZ: Well, Your Honor, we would offer that it was a contract for the rent of land and together with that came certain amenities such as security, water, and electricity. I'm sorry, not electricity, grass cutting, maintenance.
>
> JUSTICE HODGE: It was not a written contract, it was oral?
>
> MS. BERMUDEZ: It was an oral contract, yes, Your Honor.

(Oral Arguments Tr., 3, May 21, 2008.)

Later, during oral argument, Appellant's counsel also proffered the following statements as a rebuttal to the arguments advanced by Appellee's counsel:

> MS. BERMUDEZ: First of all, we believe that there was a contract, that there was an agreement concerning the price. Under the Restatement Second of Contract, Section 50, it provides for the acceptance of a contract by performance. We believe that when [Appellee] paid the $361 that she agreed to that price . . . .

---

[3] Both parties retained legal counsel for this appeal, even though the case was originally filed as a small claims case.

(Id. at 22.)

Additionally, Appellant's counsel stated at oral argument that "[t]his is a very simple landlord and tenant debt action . . .", (Id. at 2.), which confirms the same position Appellant expressed in the "argument" section of its brief, in which it had previously stated that, "[t]his is a landlord-tenant debt action . . ." (Appellant's Br. at 6.)

In its Reply Brief, Appellant argues that Appellee accepted the essential terms of the contract, because the parties agreed on the price when Appellee was informed of the price and paid it. (Appellant's Reply Br. at 2.) Appellant alleges that Appellee owes Appellant $8,000.00 for nonpayment of rent incurred from Appellee occupying a lot in the trailer park. According to Appellant, the last time Appellee paid for occupying Appellant's lot was April 4, 2006. Additionally, Appellant alleges that Appellee's rental fee for the lot was $385.00 monthly, and her occupancy was a month-to-month tenancy. (J.A. at 27.)

Appellee contends that this case involves a breach of contract when she asserts in the first sentence of the argument section in her brief that "[t]his is a breach of contract action." (Appellee's Br. at 3.) At oral argument, Appellee's counsel expressly asserted that the issue before the trial court was whether there was a contract between Appellant and Appellee. (Oral Arguments Tr., 8.) Thus, Appellee's arguments were obviously anchored in contract law. Appellee argued that "[t]here was no evidence presented that there was an oral agreement as to the essential terms of the contract, as to the price or the subject matter, and there was no implied in fact contract." (Id. at 9.) Appellee's contention that this case involves contract law is buttressed by the following dialogue:

> JUSTICE SWAN: Let me ask you this, Counselor. Under Section 90 of the Restatement of Contract, Detrimental Reliance, otherwise known as promissory estoppel, wouldn't that be applicable inasmuch as she was there and was enjoying the services and should pay something?

> MR. COLLIANNI: Yes, Your Honor, either promissory estoppel or quantum meruit, absolutely.

> . . .

JUSTICE SWAN: Let me ask you this, if we can't find a written contract, would you agree there is a quasi contract someplace here in all the —

MR. COLLIANNI: Yes, I agree there is a quasi contract.

JUSTICE SWAN: Would you agree that we might have detrimental reliance under Section 90 of the Restatement?

MR. COLLIANNI: Absolutely, but there needs to be evidence —

(*Id.* at 11, 19.)

## A. Fundamental Principles of Contract Law

I continue by addressing the basic, fundamental principles of contract law, which will enable me to completely evaluate Appellant's claim. "Contracts are traditionally classified as express, implied-in-fact, or implied-in-law." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 677 A.2d 747, 752 (N.J. Sup. Ct. 1996). A contract is a promise that is either stated in oral or written words (express contract), or a promise that can be inferred wholly or partially by conduct (implied contract). RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. a (1981). It is well settled that an enforceable contract requires an offer and acceptance. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 250 (3d Cir. 2007). An enforceable contract also requires consideration, (the bargained-for legal benefit and/or detriment), and a manifestation of mutual assent. *Navair, Inc. v. IFR Americas, Inc.*, 519 F.3d 1131, 1137-39 (10th Cir. 2008).

I conclude that valuable consideration exists in the parties' business relationship, because Appellant provided services to Appellee, and Appellee received the benefits of such services when she received maintenance services in the form of water, security, and cutting of the grass. I am mindful, however, that no evidence exists of an express, oral or written offer nor an acceptance concerning a specifically agreed upon rental or maintenance fee.

Appellant also failed to present evidence of an assent to an express agreement between the parties. Appellee testified that shortly after she moved unto the property, an employee from Appellant's office

telephonically informed her that she was required to pay a monthly maintenance fee of $361.00. Subsequently, Appellant allegedly augmented the monthly amount by adding a $50.00 late fee. In response, Appellee stated that she informed Appellant that the augmented maintenance fee was too exorbitant, and she vehemently denied agreeing to pay that amount of monthly maintenance fee, even though Appellee continued to use Appellant's property. However, Appellant asserted that Appellee owed Appellant $4,060.00 in rental fees. Accordingly, no mutual assent existed between the parties on the amount of the monthly fee. Therefore, absent an offer, an acceptance, and mutual assent, I reject Appellant's argument that the parties consummated an express, oral contract for Appellant's services.

Nonetheless, the absence of an oral contract is not necessarily dispositive of the issue before this Court. *See Wanaque Borough Sewerage Auth.*, 677 A.2d at 753. Rather, the parties are not excused from their obligations if there exists an implied contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. a (1981).[4]

Although Appellant failed to establish the existence of an express, oral or written contract, my next inquiry is whether the parties' business relationship entitles Appellant to recover on its claim for monthly fees. Therefore, I evaluate Appellant's claim in the context of a quasi-contract. After this evaluation, I conclude that Appellant is entitled to recover damages under a quasi-contract. Further, I conclude the discussion by elucidating why Appellant, in proving the existence of a quasi-contract, is entitled to recovery on the equitable theories of quantum meruit and unjust enrichment. Quantum meruit is the method commonly used to put a value on the services for which payment should be made in a quasi-contract case. Unjust enrichment occurs when there exists a retention of a benefit conferred by another, without offering compensation in circumstances where compensation is reasonably expected. BLACK'S LAW DICTIONARY 1573 (8th ed. 2004). The Supreme Judicial Court of Maine has distinguished between quantum meruit and unjust enrichment as follows:

> *Quantum meruit* . . . involves recovery for services or materials provided under an implied contract. . . . Unjust enrichment describes re-

---

[4] Section 4 of the Restatement (Second) of Contracts states that "[a] promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct."

covery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay[.]

*Paffhausen v. Balano*, 708 A.2d 269, 271 (Me. 1998) (citations omitted).

## B. Implied Contract: Quasi-Contract

An implied-in-law contract or a quasi-contract is established where "there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice." *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007). While an implied contract may be different from a quasi-contract, there have been cases in which both contracts are characterized as indistinct. *See* RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. b (1981). Additionally, a quasi-contract may be characterized as an implied-in-law contract, because the "quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises." RESTATEMENT (FIRST) OF CONTRACTS § 5 cmt. a (1932); *see also Fagot Rodriguez v. Costa Rica*, 297 F.3d 1, 7 (1st Cir. 2002); *Hershey Foods v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) ("A quasi[-]contract, also referred to as a contract implied in law[,] imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement when one party receives an unjust enrichment at the expense of another.") (citing *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 259 A.2d 443, 445 (Pa. 1969)).

The United States Court of Appeals for the Third Circuit ("the Third Circuit") defines a quasi-contractual claim as an obligation created by law in the absence of any agreement. *See Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers Int'l Union of Am*, 28 F.3d 347, 364 (3d 1994). Significantly, the Third Circuit's definition of a quasi-contract is almost identical to the Restatement (Second) of Contracts' definition of an implied-in-law contract. While some jurisdictions adopt the view that a quasi-contract is not a contract because of a lack of actual manifestation or assent, *see, e.g., Wanaque Borough Sewerage Auth.*, 677 A.2d at 752, the purpose and function of a quasi-contract are uniformly consistent — "to provide the injured party with the fair value of the work and services rendered and thus prevent unjust enrichment to another." *Wright v. Pennamped*, 657 N.E.2d 1223,

1229 (Ind. App. 1995); *see also Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226 (3d Cir. 1983) ("Quasi-contractual obligations are imposed by the law for the purpose of bringing about justice.") (citing *St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of North Am.*, 32 N.J. 17, 158 A.2d 825, 827 (N.J. 1960)).

## C. Standard of Recovery for a Quasi-Contract

Three elements are required for recovery under a quasi-contract theory: (1) a party must confer benefits on another party; (2) there must be an appreciation of the benefits by the recipient; and (3) there must be an "acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value." *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 277 (3d Cir. 2007) (citing *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000)).

To determine whether Appellant is entitled to payment based on a quasi-contract, I now address the issue, applying each element, *in seriatim*. Appellee moved her trailer onto Appellant's lot, thereby utilizing Appellant's property. Appellee received the benefits of maintenance services, security, water, and cutting of the grass on the lot she occupied. It is indisputable that (1) Appellant rendered services and conferred benefits upon Appellee; and (2) Appellee appreciated the benefits she received from Appellant, because Appellee made some payments to Appellant over a protracted period. Consequently, Appellant's claim satisfies the first two requirements of a quasi-contract.

After evaluating the parties' business relationship, I conclude that Appellant's claim also satisfies the third element for a quasi-contract. Appellee made some payment to Appellant for the services she received, even though the exact cost of the services was in dispute. Appellee never rejected the services or made any effort to dissuade Appellant from providing the services. Rather, Appellee willingly partook of the services. Allowing Appellee to enjoy the benefits of the services without paying the cost or value of the benefits she received would bestow upon Appellee an unjust enrichment and create an injustice to Appellant.[5] The Restatement provides that "a person who has been unjustly enriched at the expense of

---

[5] Title 1, section 4 of the Virgin Islands Code states the following:

another is required to make restitution to the other." RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937).

I find ample evidence in this record, which confirms that Appellee's conduct in continuing to utilize Appellant's land, while simultaneously accepting Appellant's services, and making some payments for the services reasonably led Appellant to believe that payment for maintenance services would be forthcoming. Therefore, Appellee is "estopped from resisting such payment." *See Fagot Rodriguez*, 297 F.3d at 7.

As I review the extent of the benefit to which Appellee received, it is obvious that Appellee occupied a lot for which the occupant is customarily charged maintenance fees. Such relationships are presumptively characterized by an arrangement involving the payment of fees. Furthermore, a customary practice is for a landowner to charge for services provided to an occupant of the land. Therefore, I conclude that a quasi-contract existed between the parties based upon their business dealings with each other, in which Appellant provided service for a cost to Appellee, who willingly accepted the benefits of the same service.

At trial, Appellant presented monthly statements dating from May 3, 2006 to July 10, 2007 for fees Appellant billed to Appellee. Although Appellee denies reviewing the monthly statement, she admitted that she owed a disputed amount of money to Appellant for services Appellant furnished to her. Accordingly, it is irrefutable that Appellee would be unjustly enriched if she retains the benefits of the services she had already received without tendering payment to Appellant for the value of those services.

Also, it is undisputed that Appellee had previously paid Appellant $550.00. Additional evidence discloses that Appellee had previously made payments to Appellant, purportedly for the same services. To buttress its claim, Appellant provided the trial court with multiple monthly invoices that Appellant purportedly forwarded to Appellee, which supports the contention that Appellant reasonably expected payment for maintenance services provided to the lot that Appellee

---

The rules of common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

occupied. After considering the factual circumstances of this case, it is indubitable that it would be unjust and inequitable for Appellee to receive the benefit of Appellant's services without paying for them.

## D. Recovery Based on Quantum Meruit

Finally, Appellee argues that Appellant failed to provide evidence of the reasonable value of the services rendered; therefore, Appellant is not entitled to recover in quantum meruit. (Appellee's Br. at 6.) I disagree. "A recovery in quantum meruit is based on an implied-in-law contract." *Int'l Data Prods. Corp.*, 492 F.3d at 1325. I earlier concluded that a quasi-contract existed between the parties. Furthermore, "[q]*uantum meruit* is a *quasi*-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all." *Hershey Foods Corp.*, 828 F.2d at 998 (3d Cir. 1987) (internal quotations omitted). Quantum meruit is consistent with my conclusion that Appellant is entitled to recover the amount due and owing based on a quasi-contract. No fact exists on the record to remotely suggest that a recovery in quantum meruit is inappropriate or unjustified in this case.

Nevertheless, the specific amount Appellee owes Appellant remains unresolved. Although I find the existence of an enforceable quasi-contract, the parties disagree on the monthly fee Appellee owes to Appellant. Therefore, I will remand this case to the trial court for further proceedings.

## V. CONCLUSION

Although Appellant has failed to establish proof of an express, oral or written contract for renting land, Appellant is entitled to recover in quantum meruit the monetary value of the services it provided Appellee. Accordingly, I will reverse the trial court's decision, because an enforceable quasi-contract exists. I also remand this case for the trial court to determine the amount of maintenance fees Appellee owes Appellant.