

**FILED**

February 03, 2021
ST-2020-CV-00323
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| MYRAH KEATING-SMITH, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> HUSSEIN MUSTAFA, ) <br><br> Defendant. ) | **CIVIL NO. ST-2020-CV-00323** <br><br> **ACTION FOR FORCIBLE ENTRY AND DETAINER** |

**Cite as: 2021 VI Super 13U**

### MEMORANDUM DECISION

**CARR, H.,** *Magistrate Judge*

¶1 **THIS MATTER** was heard by Magistrate Henry V. Carr, III of the V.I. Superior Court on January 26, 2020. At that time, no in-court hearings were allowed without receipt of specific permission due to the COVID-19 pandemic. Therefore, Plaintiff Myrah Keating-Smith appeared at trial in person with her legal counsel, Maria T. Hodge, Esq., via the video-conferencing platform "Zoom." Defendant Hussein Mustafa, whose name was corrected on the record because it was in reverse order in previously submitted documents, appeared in person with his legal counsel, Carol A. Rich, Esq., via Zoom. Defendant's son, Mohammad Mustafa, also appeared via the Zoom platform. Both parties testified, as did Defendant's son.

¶2 Under an FED Complaint filed on August 7, 2020, pursuant to Titles 4 and 28 of the Virgin Islands Code, Sections 123(6) and 782, respectively, Plaintiff seeks the eviction of Defendant from the subject premises on grounds that Defendant is a month-to-month tenant under an expired commercial lease agreement dated April 20, 2011. Plaintiff further alleges that Defendant was served with a proper 30-day notice to quit; yet he remains in unlawful possession of the property and continues to operate a business known as Bayside Mini Mart, a grocery and retail store, on the property. Plaintiff further alleges that she is "the owner and landlord of premises described as Units 1, 2, 3, and 4 located at Meada's Plaza, Building #2, Parcel No. 6B Cruz Bay Town, St. John, U.S. Virgin Islands."

¶3 On December 30, 2020, Defendant, through his legal counsel, filed a motion to dismiss the FED Complaint. His grounds in support of dismissal were as follows:

> (a) the Court lacks jurisdiction to adjudicate this matter as a summary proceeding for Forcible Entry and Detainer (FED) under 28 V I C § 782, because Hussein Mustafa has a valid unexpired lease for the premises at Units 1, 2, 3, and 4 Meada's Plaza, Building #2, Parcel 6B Cruz Bay Town; (b) there is a bona fide dispute over

whether Mr. Mustafa has a right to specific performance of Plaintiff Myrah Keating-Smith's promise to further extend the Lease through December 31, 2024; (c) Defendant has filed a civil action in the Superior Court against Plaintiff for specific performance and damages [filed on December 30, 2020 in ST-2020-CV-00515] because this is a dispute that cannot be adjudicated as a summary proceeding; and (d) Plaintiff's notice to quit is defective.

¶4      On January 6, 2021, Plaintiff, through her legal counsel, filed an Opposition to Defendant's Motion to Dismiss contending that the Court cannot dismiss her Complaint "[until] the Court after taking of evidence concludes the Defendant has presented actual evidence demonstrating he has a colorable claim of right[,]" citing *V.I. Port Authority v. Joseph*, 49 V.I. 424, 431 (2008). Under the authority of *V.I. Port Authority* and other local judicial cases, the Court denied the Motion by Order dated January 22, 2021. ("The Court is duty-bound to proceed with evidence until it appears that either or both of [a question of title or a complicated case of the right to possession] does or do in fact exist.") *Inter Car Corp. v. Discount Car Rental*, 21 V.I. 157 158-159 (Terr. Ct. 1984), cited by *V.I. Port Authority, supra.*

¶5      This case was originally scheduled to be heard on January 7, 2021, but was continued to January 26, 2021, due to a medical emergency suffered by Defendant. Said continuance was sought by Attorney Rich on January 7, 2012 and was not opposed by Attorney Hodge, so long as the case could be heard within the next several weeks.

¶6      After the taking of testimony and the admission of documents into evidence from each side, the Court heard closing arguments by counsels. At the conclusion of the January 26, 2021 hearing, the Court took the case under advisement for the purpose of issuing a written decision and judgment. Based upon its findings of fact and conclusions of law herein, the Court determines that it has not been divested of exercising FED jurisdiction as it finds no colorable defense or equitable concerns that must be addressed in the regular civil division of the Superior Court. It will therefore issue a judgment granting Plaintiff immediate restitution of the leased premises.

## I.      The applicable law and standard.

¶7      Under *Inter Car Corp., supra* at 159, Plaintiff has pled one of the four conditions under which a FED case can exist before the Magistrate Court: "There is an undisputed oral or written lease which has expired." In addition, Plaintiff must further prove that "the appropriate notice to quit in the particular case has been served on the tenant according to law." *Id.* "However, a FED cause of action will not lie where: 1. Title to the premises is in question; or 2. Where there is proved to the Court to exist a bona fide question of the existence of a lease at law or in equity, which has not yet expired." *Id.* at 159. *See also Iron Mountain & H. Railroad v. Johnson*, 119 U.S. 608, 612 (1887); *C.M.L., v. Dunagan*, 904 F.2d 189, 191 (3d Cir. 1980). "As soon as a defendant in possession in an FED action raises a colorable defense requiring construction of an agreement between the property owner and the party in possession, an FED action will not lie." *Estate of Thomas Mall, Inc. v. Territorial Court of the Virgin Islands*, 923 F.2d 258, 264 (3d Cir. 1991) citing *Iron Mountain, supra.* "... the jurisdiction of the Court in FED cases is confined to determining the issue of peaceable possession and does not extend to (a) an adjudication of title or

(b) the right to possession; nor can the justice adjudicate a right of possession that depends on an equitable interest in the premises or inquire into equitable rights and give relief to which the party might be entitled in equity. *Inter Car Corp., supra* at 158. FED actions do not extend to deciding colorable claims of right to be in possession of the leased premises. *Estate of Thomas Mall, supra* at 264.

¶8 The term "bona fide and good faith claim" and/or "colorable defense or claim" are used interchangeably by the courts. These terms have been interpreted to mean not frivolous and not wholly without merit. *Malpere v. Anahita Miraftabi Revocable 2004 Trust*, 426 F.Supp.3d 123 (D.C.V.I. App. Div. 2019). The bar obviously is not particularly difficult to meet in divesting a court from exercising FED jurisdiction. However, while the bar is admittedly low, the Court does not believe that, under the various definitions of bona fide and good faith claim and/or colorable defense or claim, the Court can construe a tenant's evidence in a way which would be in clear violation of a statute or its underlying policy.

¶9 However, before an FED action can succeed under any of the four conditions set forth in *Inter Car Corp.*, Plaintiff must establish proper service of the appropriate notice to quit. "When the rent received in a lease … is payable at periods of less than three months the time of such notice [of termination] shall be sufficient if it equal to the interval between the times of payment." 28 V.I.C. § 752. *See also* 28 V.I.C. § 789(a)(2). The law in the Virgin Islands is that a month-to-month tenancy can only be terminated upon service of a thirty day written notice to terminate. *Virgin Islands Housing Authority v. Edwards*, 30 V.I. 3, 5 (Terr. Ct. 1994). "A notice to quit shall be in writing and shall be served upon the tenant or person in possession by being delivered to him or left at the premises in case of his absence therefrom." 28 V.I.C. § 790.

## II. Agreements for the lease of real property for more than a year must be in writing to avoid being in violation the V.I. statute of frauds.

¶10 The Virgin Islands Statute of Frauds states, in pertinent parts:

(a) Except for a lease for a term not exceeding one year, no estate or interest in real property,… can be created, granted, assigned, transferred, surrendered, or declared, otherwise than ----

(2) by a deed or conveyance or other instrument in writing signed by the person creating, granting, assigning transferring surrendering, or declaring same,…

28 V.I.C. 241.

¶11 Section 242 of Title 28 of the Virgin Islands Code specifically provides:

Every Contract for the leasing of land for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority.

¶12 The creation, granting, or assignment of any interest in real property longer than one year is void unless such interest is in writing and signed by the party to be charged. *Peppertree*

*Terrace v. Williams,* 52 V.I. 225, 231 (2009); *Fountain Valley Corp. v. Wells,* 19 V.I. 607, 615 (D.C.V.I. 1983). The V.I. Statute of Frauds is substantive law and not a rule of evidence. *Globe Oil v. Hess,* 5 V.I. 260 (Terr. Ct. 1966).

¶13     The Court can gather from multiple local judicial decisions that the purpose of the statute of frauds, when dealing with a vital interest affecting real property, is to bring certainty and definiteness to real property transactions and for the prevention, by its name sake, of fraud or perjury. In other words, not only does the statute of frauds seek to protect the interest of third parties, but also to assist the trier of fact in determining the parties' intentions involving a matter as important as real property.

¶14     If the parties' intentions are expressed in a discernible writing, it leaves the decider, judge or jury, with less wriggle room. *Urh v. Buffo,* 2017 V.I. LEXIS 17 (V.I. Sup.Ct. 2017). The purpose of the statute of frauds "is to protect contracting or negotiating parties from the vagaries of the trial process. A trier of fact may easily be fooled by plausible but false testimony to the existence of an oral contract. This is not because judges or jurors are particularly gullible but because it is extremely difficult to determine whether a witness is testifying truthfully." *Id.* at **10-11, quoting from the Seventh Circuit Court of Appeals.[1] *See also Mountaintop v. Colombian Emeralds Int'l,* 43 V.I. 193, 209 (Terr. Ct. 2001). (The purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury ....")

¶15     Part performance can take the transaction out of the operation of the statue of frauds. In *Barnes v. Weber,* the Superior Court found credible evidence to support a colorable defense of part performance that would divest itself from exercising FED jurisdiction. 50 V.I. 167 (Sup. Ct. 2008). "Weber has provided written evidence to support her claim to a life estate, and provided credible evidence that she lived on the property and provided services to Ford before his death." *Id.* at 178. The Court cited the equitable doctrine of part performance as follows:

> In order to enforce a verbal agreement on the grounds of part performance, the evidence presented must be clear and definite in both the terms and the subject matter of the contract.... Additionally, the plaintiff must show such acts and conduct of the defendant which amount to a representation that the defendant proposed to honor the oral agreement and not avail himself to the Statute of Frauds in order to escape its performance. Furthermore, the plaintiff must have relied on this representation, either in performance or pursuance of his contract, so that he would incur an unjust and unconscientious injury and loss if the defendant is allowed to rely on the statute.

---

[1] This Magistrate Court recognizes that in *Urh,* Superior Court Judge Denise M. Francois implied that the statute of frauds is evidentiary, but she made no final determination and left the precise issue to be briefed by the parties of whether the majority or minority rule concerning the application of the statute of frauds should be the prevailing common law rule in the Virgin Islands under *Banks.* What is important is what she recognized: "suggested contract terms change during the course of a negotiation and the proposed wording of a contact might greatly differ during the beginning of and the end of negotiations. The Statute of Frauds saves a court from having to take time to consider parole evidence to figure out parties' mutual intent upon arriving at a final agreement." *Id.* at **11-12.

*Id.* at 177, *citing Jackson v. Pitterson*, 2008 U.S. Dist. LEXIS 65111, *16, n. 19. (D.V.I. 2008).

## FINDINGS OF FACT

¶16     Based upon the testimony of the parties and of Defendant's son, and upon review of the exhibits admitted into evidence, the Court makes these findings of fact:

¶17     Plaintiff Myrah Keating-Smith brought this action in her individual name but is the co-trustee, along with her husband Ralph Solomon, of the trust that owned the premises in question at the time that the Commercial Lease, described herein, was executed between the parties. However, she has the specific authority to handle and manage the real properties in the trust, including the subject premises.

¶18     Defendant Hussein Mustafa is a tenant under the written Commercial Lease agreement signed by him and Plaintiff on or about August 20, 2011 for Units 1, 2, 3, and 4 located at Meada's Plaza, Building #2, Parcel No. 6B Cruz Bay Town, Cruz Bay Quarter, St. John, U.S. Virgin Islands. *See* Signed Guarantor Agreement attached to the Commercial Lease. Pl. Ex. "A".

¶19     The original basic term of the lease was for five years commencing on March 1, 2011 and terminating on February 28, 2016.

¶20     There was one five year option under paragraph 1.(2) of the Commercial Lease:

> Provided Tenant has not been in default of the terms of the Lease, Tenant shall have the option to renew this lease for an additional lease term of five (5) years, provided that Tenant gives Landlord, or its duly authorized agent, written notice of such intention by registered mail, not less than three months in advance of the expiration of this Lease.  The rent payable during the option period shall be determined by negotiations between the parties hereto.  In the event that the parties cannot reach an agreement, within 90 days after receipt of notice from tenant of its exercise of its option to renew, as to the rent payable during the option period, then the lease shall terminate.

¶21     During the first year of the five year term of the Commercial Lease the rent was $119,400.00 per year payable in monthly installments of $9,950.00, following which the rent would increase annually: "[d]uring the second and subsequent years of the Term, the Base Rent shall be increased by three percent (3%) per year." ¶ 2.(2) of Pl. Ex. "A".

¶22     The security deposit was double the first year's basic monthly rent of $9,950.00, or $19,900.00. "In the event the rental hereunder is increased as hereinabove provided, Tenant shall, within 15 days of any rent increase, pay to Landlord such additional sums as are necessary to equal out a security deposit encompassing the sum equal to two (2) increased monthly installments." ¶ 2.(5) of Pl. Ex. "A".

¶23    Paragraph 21.(1) of the Commercial Lease stated: "in the event of Tenant holding over after the termination of this lease, thereafter the tenancy shall be from month-to-month in the absence of a written agreement to the contrary."

¶24    Consistent with "Use of the Premises" provisions in ¶ 3.(1), Defendant operated on the leased premises a "general store involved in retail sales" known as Bayside Mini Mart.

¶25    Defendant never exercised the option to renew the Commercial Lease for another five years. Upon expiration of the Commercial Lease, Defendant became a month-to-month tenant whose tenancy could be terminated upon giving a 30-day notice to quit.

¶26    When Defendant failed to exercise the lease's option, sometime in July 2017, Plaintiff delivered a proposed "Amendment to Commercial Lease" to Defendant, subject to certain conditions: 1. Pay the back accrued rent increases at 3% commencing the second year of the basic lease term and continuing each year thereafter, 2. Pay the security deposit, and 3. Sign a written lease renewal. Pl. Ex. "B". While it appears that Defendant may have complied with conditions one and two, he never returned a signed lease renewal to Plaintiff. No signed lease renewal was ever offered or admitted into evidence by either side.

¶27    One of the only two documents over which the parties argued was Plaintiff's Exhibit "B", the unsigned "Amendment to the Commercial Lease." While Plaintiff claims that she delivered that document to Defendant, Defendant and his son both deny ever seeing the document until the date of the January 26, 2021 hearing. The Court simply does not find their denial to be credible.

¶28    One, Plaintiff has been cautious in making certain that Defendant must receive certain notices, so why would she not be as cautious in making certain that Defendant received the Amendment to Commercial Lease? There was no testimony by Plaintiff that she was upset at how Defendant was operating his mini-mart on the leased premises until after she decided to terminate the month-to-month tenancy in the latter part of 2020. Defendant was paying the basic monthly rent and then agreed to pay the 3% annual rent increases in agreed-upon installments. In other words, the Court cannot discern any reason why Plaintiff wanted Defendant not to continue his mini-mart business on the leased premises by executing a written document to continue the lease until February 28, 2021.

¶29    Two, and even more confounding, Plaintiff and her husband both reside in Cruz Bay, St. John, where the Bayside Mini Mart is located. Something as important as a lease to safely and uninterruptedly continue the operation of one's business was left up in the air, while Defendant had only to travel a small distance in Cruz Bay, St. John to either deliver a written exercise of the option or a signed Amendment to the Commercial Lease to either Plaintiff and/or her husband. There is no evidence that Defendant did either. Defendant is a businessman who operated several businesses in Meada's Plaza since 2002, including a gift shop known as Fantasia and a self-serve coffee and yogurt shop known as Sip and Chill. The Court therefore cannot dismiss this failure as the ignorance of a naïve actor.

¶30    On or about June 29, 2020, Plaintiff and her husband personally delivered to Defendant's business premises, as well as by certified mail, a 30-day notice to quit the premises by July 30, 2020. Pl. Ex. "C".

¶31    On or about July 9, 2020, Plaintiff and her husband delivered personally, as well as by certified mail, a notice to Defendant from Plaintiff dated July 9, 2020 titled "reiteration of notice of termination of tenancy dated June 29, 2020", demanding that Defendant deliver possession of the leased premises to Plaintiff by July 30, 2020. Pl. Ex. "D".

¶32    When it appeared that Defendant was doing nothing to vacate the premises by July 30, 2020, Plaintiff had her legal counsel, Maria T. Hodge, Esq., write a letter dated July 23, 2020 to Defendant urging him to vacate the leased premises by July 30, 2020. Pl. Ex. "E". Plaintiff and her husband personally delivered Attorney Hodge's letter to Defendant at his place of business.

¶33    Attorney Hodge wrote another letter to Defendant dated August 3, 2020 that his month-to-month tenancy terminated on July 30, 2020 and because he still remains in possession of same, he must vacate the leased premises within 3 days from the date of her letter under the provisions of Title 28 of the Virgin Islands Code, Section 789(a)(2). Plaintiff and her husband both delivered this notice to Defendant at his place of business, presumably about the same time as the date on the notice. Pl. Ex. "F".

¶34    Defendant continued to operate the Bayside Mini Mart on the leased premises and continues to operate same through the date of hearing.

¶35    In order to prevent the invalidation of the notices to quit, the last rent check that Plaintiff deposited and cashed was for the month of June 2020. Defendant continued to send monthly rent checks that Plaintiff did not deposit until he started to forward the rent checks to his legal counsel, Carol Rich, Esq., who deposited them into her escrow account. Presumably, there are six months' worth of rent checks that are outstanding, though Plaintiff testified that she paid the gross receipt taxes on the rental amounts.

**February 11, 2017 Letter**

¶36    Apparently, Defendant relies on a February 11, 2017 letter from Plaintiff to Defendant detailing the rent deficiencies respecting the 3% annual rent increases commencing the second year of the basic lease's term that Defendant had failed to pay from March 1, 2016 through March 1, 2017 in the total amount of $10,857.00. Def. Ex. "A". Several lines were crossed out on the second page, but this line was not: "Lease Renewal Period: Monthly rent payments March 1, 2016 – February 28, 2021 = $11,198.82.

¶37    While Plaintiff emphatically denies that she ever declared that the February 17, 2017 letter was the lease renewal or amendment, Defendant and his son testified that she did declare or tell them that the February 11, 2017 letter constituted the lease renewal. The Court accepts Plaintiff's testimony that she never declared that the February 17, 2017 constituted the lease renewal or extension. First, the February 11, 2017 letter comes a year after Defendant should have exercised the five-year option, in writing by registered mail, at least 90 days before expiration of the basic term of the Commercial Lease expiring on February 28, 2016. Second,

the preface of the February 11, 2017 letter states that it is being sent out after, upon considering Defendant's request for a lease renewal, Plaintiff discovered that Defendant was in default by failing to pay the annual rent increase of 3%. Third, Plaintiff's alleged declaration that the February 11, 2017 letter would be the lease renewal, instead of a written and signed Lease Amendment, e.g., Pl. Ex. "B", would fly in the face of Plaintiff's past business practice of requiring her tenants to execute formal written Lease Renewals or Extensions. (The Court entirely disregarded Defendant's testimony that other lease renewals for his various other businesses he operated in Meada's Plaza were not done through written lease renewals as insubstantial and contrary to Plaintiff's testimony). Fourth, the proposed construction of the February 11, 2017 letter that it was intended to be the lease renewal would conflict with the three condition precedents that Defendant was obligated to satisfy before Plaintiff would consider extending the lease for another five years. Defendant had not paid the accrued rent; Defendant had not paid the security deposit or the amount it had increased in accordance with the 3% annual increase in rent; and Defendant had not even signed the Amendment to Commercial Lease.

¶38      In other words, the Court believes that the purpose behind the statute of frauds comes into operation here and, in particular, under § 242: every contract for a lease longer than a year for any interest in land is void unless such "contract or note or memorandum is in writing." Even if the Court were to assume that each party knew the description of the premises whose lease's term was sought to be extended under the Commercial Lease dated April 20, 2011, according to the subject portion of the February 11, 2017 letter, Plaintiff's hotly disputed alleged oral declaration is being used by Defendant as a sword to defeat the application of the statute of frauds under § 242. The letter, taken as a whole, does not satisfy the requirements of the statute of frauds, even if the Court were to consider Plaintiff's alleged oral declaration that the February 11, 2017 letter was the lease renewal. Moreover, that alleged oral declaration should have been in writing in order to be enforceable.

### January 9, 2018 Rent Abatement Letter

¶39      Plaintiff hand-delivered to Defendant a letter dated January 9, 2018 , wherein she gave all of her tenants, including Defendant, a four-month rent abatement for the months of September 2017 through December 2017, for a total of $44,792.00 / 4 = $11,198.00 per month, plus no insurance and property tax contributions required by the lease for 2017. Defendant wants the Court to construe this January 9, 2018 letter as a tacit admission through certain language in that letter that the parties were operating under a lease renewal through February 28, 2021. Def. Ex. "B".

¶40      The same letter mentions that Defendant had not paid the security deposit or the twice-increased monthly rent then due. The Court does not construe this letter as a tacit admission by Plaintiff that the February 17, 2017 letter formed the lease renewal between the parties to February 28, 2020.

¶41      Even if the letter's language is less than precise, there is nothing in the letter that would indicate that Plaintiff was treating Defendant as anything less than a month-to-month tenant whose lease Plaintiff had not yet terminated.

### April 10, 2020 Lease Repair Letter

¶42    Defendant attempts to use Plaintiff's April 10, 2020 letter to establish a couple of matters. Def. Ex. "C". One, Defendant claims that Plaintiff nefariously forwarded this letter to him demanding that he must address certain conditions on or around the leased premises and then after Defendant complied with her demands, Plaintiff then terminated his tenancy. Two, Defendant relied on his letter to correct the conditions of the leased premises therefore implying some form of promissory estoppel or part performance. And the corollary to number two, this is further proof that Plaintiff had established the February 11, 2017 letter as the lease renewal through February 28, 2021. Defendant did correct the defective conditions of the leased premises by June 2020.

¶43    The April 10, 2020 letter does not require Defendant to make any repairs in connection to the leased premises but instead to remove certain longstanding items that may have been in violation of the lease from its inception: removal of a shack installed without Plaintiff's permission, relocation of a condenser installed without Plaintiff's permission, and replacement of a rotten and rodent infested baseboard behind the coolers.

¶44    Plaintiff's April 10, 2020 letter requests are entirely consistent with a tenant who is holding onto the leased premises on a month-to-month basis and who still has certain lease obligations with which to comply before that month-to-month tenancy is terminated by the landlord.

¶45    Defendant's son testified that his father expended upward of $300,000.00 to clean and disinfect the Bayside Mini Mart damaged by the two September 2017 hurricanes and to remove and replace damaged inventory and equipment. The Court questions the competency of this witness to testify about this matter and finds that if such expenditure was made by Defendant, it was based upon a misplaced reliance on a lease renewal that was not executed in accordance with law.

### CONCLUSIONS OF LAW

¶46    The Magistrate Court has jurisdiction over this matter pursuant to subsection (a)(6) of section 123 of Title 5 of the Virgin Islands Code.

¶47    Plaintiff has established by a preponderance of the evidence that the April 20, 2011 Commercial Lease between the parties expired on February 28, 2016.

¶48    Defendant did not exercise the five-year option by submitting to Plaintiff an exercise of that option, in writing, by registered mail, not less than 90 days before the expiration of the lease. Thereafter, Defendant became a month-to-month tenant.

¶49    None of Defendant's Exhibits, including Plaintiff's disputed declaration that the February 11, 2017 letter was to be the lease renewal, satisfy the statute of frauds requirements in order for there to be an enforceable lease renewal.

¶50    Defendant has failed to establish any colorable defense – even at a minimum level – that would deprive this Magistrate Court from exercising FED jurisdiction. To make a finding that Defendant had made a minimum showing of a colorable defense would be in direct contravention of the statute of frauds and its underlying policy. In fact, it would be tantamount to a judicial grant of a lease renewal, more than a year through February 28, 2021, in direct violation of the V.I. statute of frauds and its underlying policy.

¶51    Defendant has failed to establish any part performance that would take the transaction out of the operation of the statute of frauds, including Plaintiff's alleged oral declaration that the February 11, 2017 letter was the lease renewal.

¶52    Plaintiff properly served Defendant with the appropriate 30-day notice to quit the leased premises.

¶53    Defendant unlawfully remains in possession of the leased premises for which Plaintiff is entitled to a judgment granting her immediate restitution of the leased premises.

¶54    Defendant or his legal counsel is wrongfully withholding monthly rent money that must be returned to Plaintiff due to his continued use and occupancy of the leased premises for the Bayside Mini Mart. The continued withholding of this rental money or the failure to return same to Plaintiff would impermissibly enrich Defendant to Plaintiff's financial detriment, while he has operated and continues to operate the Bayside Mini Mart on the leased premises without providing Plaintiff due compensation in exchange for same.

¶55    A written Judgment will follow this Memorandum Decision granting in Plaintiff's favor and against Defendant the immediate restitution of the leased premises, plus the return of all rental monies held in escrow or otherwise. A copy of this Memorandum Decision will be forwarded to counsel of record.

DATED: February 3, 2021

_____
HENRY V. CARR, III
Magistrate Judge of the Superior Court
of the Virgin Islands

ATTEST:
**TAMARA CHARLES**
Clerk of the Court
BY:_____
**COLLEEN SALEM**
Senior Deputy Clerk  2/13/2021